NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2018 VT 72

Nos. 2017-051 & 2017-126

| | |
|---|---|
| State of Vermont | Supreme Court |
| v. | On Appeal from<br>Superior Court, Rutland Unit, |
| Shannon Rajda | Criminal Division |
| State of Vermont | November Term, 2017 |
| v. | |
| Albert Lee Lape, Jr. | |

Cortland Corsones, J.

Rosemary M. Kennedy, Rutland County State's Attorney, and John D.G. Waszak and
  Travis Weaver, Deputy State's Attorneys, Rutland, for Plaintiff-Appellant.

Matthew Valerio, Defender General, and Joshua O'Hara, Appellate Defender, Montpelier, for
  Defendants-Appellees.


PRESENT:  Reiber, C.J., Robinson, Eaton and Carroll, JJ., and Davenport, Supr. J. (Ret.),
          Specially Assigned


¶ 1.   **REIBER, C.J.**  In the above consolidated cases, the State appeals the trial court's interlocutory orders granting defendants' motions in limine seeking to suppress evidence of their refusal to submit to blood tests to determine if they were operating a motor vehicle under the influence of drugs (DUI).  The trial court granted the motions in limine based on its conclusion that in Birchfield v. North Dakota, ___ U.S. ___, 136 S. Ct. 2160 (2016), the U.S. Supreme Court recognized a constitutional right, pursuant to the Fourth Amendment of the U.S. Constitution, to refuse to submit to a warrantless blood test.  In the trial court's view, that constitutional right supersedes Vermont's implied consent law and precludes the State from introducing evidence of defendants' refusal at their criminal DUI trial.  The State challenges the trial court's interpretation

of Birchfield, arguing that the U.S. Supreme Court indicated therein that evidence of a refusal to take a warrantless blood test in the context of a DUI arrest and prosecution could be admitted at trial as evidence of guilt. Defendants respond that the constitutional issue has been effectively mooted by a post-Birchfield amendment to Vermont's implied consent law and that, in any event, the trial court correctly construed Birchfield and other related federal law to prohibit the admission of evidence of a refusal to consent to a warrantless blood test. We conclude that the amendment to the implied consent law did not moot the constitutional issue before us. We further conclude that the trial court erred in determining that, following the Birchfield decision, the Fourth Amendment prohibits admitting in a criminal DUI proceeding evidence of a defendant's refusal to submit to a warrantless blood test requested pursuant to Vermont's implied consent law. Accordingly, we reverse the trial court's decisions granting defendants' motions in limine and remand the cases for further proceedings consistent with this opinion.

I. Facts and Procedural History

¶ 2. In State v. Rajda, the trial court accepted as true the following facts set forth in the State's affidavits. On September 3, 2015, a state trooper responded to a report of a motor vehicle accident in Shrewsbury, Vermont. At the scene, the trooper interviewed defendant, who stated that she "blacked out" while driving on the road and regained consciousness immediately before crashing her vehicle. She told the trooper that her driver's license had been suspended following a conviction for DUI. She also stated that she had a history of alcohol use and opiate addiction. She denied having had anything to drink before the crash, and a preliminary breath test indicated a 0.00 blood-alcohol content (BAC).

¶ 3. The trooper then arrested defendant on suspicion of DUI and driving with a suspended license. Following the arrest, a drug recognition expert evaluated defendant and determined that she was under the influence of a central nervous system depressant. When asked to submit to a blood test, defendant refused.

2

¶ 4.     The State originally charged defendant with: DUI, third offense[1]; criminal refusal; operating a motor vehicle with a suspended license; reckless endangerment; and cruelty to a child under ten years of age.  Following the Birchfield decision, in which the U.S. Supreme Court held that a motorist suspected of DUI could not be criminally prosecuted for refusing to take a blood test, ___ U.S. at ___, 136 S. Ct. at 2184-86, the State dismissed the criminal refusal charge.  Defendant filed a motion in limine seeking to suppress evidence of her refusal to submit to a blood test, arguing that under Birchfield she had a constitutional right to refuse to submit to the test and thus the State could not present evidence of her refusal to do so.  In opposition to the motion, the State argued that the holding in Birchfield prohibited only a separate prosecution for a refusal and did not extend to prohibiting admission of evidence of a refusal at a DUI prosecution.

¶ 5.     In a February 1, 2017 decision, the trial court agreed with defendant, ruling that after the U.S. Supreme Court's decision in Birchfield, the Fourth Amendment prohibited admission of evidence of a refusal to submit to a warrantless blood test.  Accordingly, the court concluded that the provision in Vermont's implied consent law explicitly allowing the introduction of evidence of a refusal to take an evidentiary test, defined as either a breath or blood test, was unconstitutional under the U.S. Constitution to the extent it applied to blood tests.

¶ 6.     Two months later, the same trial court judge, by entry order, granted defendant's motion in limine in State v. Lape.  As in Rajda, a drug recognition expert found defendant to be impaired after he was arrested for DUI.  Defendant was initially charged with DUI-fourth offense, criminal refusal-third offense, driving with a suspended license, and possession of a narcotic drug.  In response to defendant's motion in limine, the State dismissed the criminal refusal charge.  The trial court concluded that no facts distinguished this case from State v. Rajda with respect to its legal analysis.

---

[1]  With respect to the DUI charge, both defendants were charged with operating a motor vehicle when "under the influence of any other drug [than intoxicating liquor] or under the combined influence of alcohol and any other drug," in violation of 23 V.S.A. § 1201(a)(3).

3

¶ 7.    In each case, the State filed a motion for permission to file an interlocutory appeal, and the trial court granted the motions. We accepted the interlocutory appeals and consolidated the cases for purposes of briefing and argument.

¶ 8.    On appeal, the State argues that there is no constitutional basis for excluding refusal evidence in DUI prosecutions and that the U.S. Supreme Court's decision in Birchfield strongly suggested that the evidentiary consequences of a refusal to submit to a blood test in such circumstances are not constitutionally barred. Defendants respond that: (1) the appeals should be dismissed as moot in light of an amendment, effective July 1, 2017, to Vermont's implied consent law that continues to expressly allow the admission of a refusal to submit to a warrantless breath test, but no longer expressly allows the admission of a refusal to submit to a warrantless blood test; and (2) in any event, the trial court correctly ruled that, after Birchfield, the admission of evidence at a criminal DUI prosecution of a defendant's refusal to submit to a warrantless blood test violates the Fourth Amendment of the U.S. Constitution.

## II. Statutory Amendment

¶ 9.    Defendants first argue that we need not resolve the constitutional issue raised in these appeals because the Legislature has amended the implied consent statute to make it clear that evidence of a refusal to take a blood test, as opposed to a breath test, may not be admitted at a criminal DUI prosecution. We disagree.

¶ 10.    Under Vermont's implied consent law, any person operating a motor vehicle on a highway within the state "is deemed to have given consent to an evidentiary test of that person's breath for the purpose of determining the person's alcohol concentration or the presence of other drug in the blood." 23 V.S.A. § 1202(a)(1) (emphasis added). Further, a motor vehicle operator "is deemed to have given consent to the taking of an evidentiary sample of blood" in situations where "breath testing equipment is not reasonably available or . . . the officer has reason to believe that the person is unable to give a sufficient sample of breath for testing or . . . the law enforcement

4

officer has reasonable grounds to believe that the person is under the influence of a drug other than alcohol." Id. § 1202(a)(2) (emphasis added). When an officer has reasonable grounds to believe that a person is operating a motor vehicle while impaired, in violation of 23 V.S.A. § 1201, an "evidentiary test shall be required." Id. § 1202(a)(3). An evidentiary test is defined by statute as "a breath or blood test which indicates the person's alcohol concentration or the presence of other drug and which is intended to be introduced as evidence." Id. § 1200(3). The implied consent law criminalizes refusing a reasonable request to take "an evidentiary test" when either the person has a prior DUI conviction or was involved in an accident that resulted in serious bodily injury or death to another. Id. § 1201(b)-(c).

¶ 11. In June 2016, the U.S. Supreme Court held in Birchfield that, absent exigent circumstances, "the Fourth Amendment permits warrantless breath tests incident to arrests for drunk driving," but does not permit the taking of warrantless blood tests either incident to an arrest for drunk driving or based on the driver's legally implied consent to submit to the test. ___ U.S. at ___, 136 S. Ct. at 2184-86. In an apparent response to this decision, the Legislature amended § 1202 as follows. First, at the end of the subsection on blood tests, § 1202(a)(2), the following sentence was added: "A blood test sought pursuant to this subdivision (2) shall be obtained pursuant to subsection (f) of this section." 2017, No. 62, § 9. Second, the clause "[i]f a blood test is sought from a person pursuant to subdivision (a)(2) of this section" was added to the beginning of § 1202(f), which provides that a law enforcement officer may apply for a search warrant to conduct a blood test if a person who has been involved in an accident resulting in serious injury or death to another refuses an evidentiary test. Id.

¶ 12. Third, and most relevant to this appeal, is the amendment to § 1202(b). The subsection previously provided as follows: "If the person refuses to submit to an evidentiary test it shall not be given, except as provided in subsection (f) of this section, but the refusal may be introduced as evidence in a criminal proceeding." 23 V.S.A. § 1202(b) (2014) (emphasis added).

5

After enactment of the amendment, the subsection now reads: "A refusal to take a <u>breath</u> test may be introduced as evidence in a criminal proceeding." 23 V.S.A. § 1202(b) (emphasis added); see 2017, No. 62, § 9.

¶ 13.    Defendants argue that this change demonstrates the Legislature's intent to prohibit admitting in a criminal DUI proceeding evidence of a refusal to submit to a warrantless blood test. Defendants reason that because § 1202(b) still explicitly allows admitting evidence of a refusal to take a breath test but no longer explicitly allows admitting evidence of a refusal to take an evidentiary test, which by definition would include a blood test, the Legislature has expressed its intent to prohibit admitting evidence of a refusal to take a blood test. Defendant further argues that because amendments concerning the admissibility of types of evidence are considered procedural rather than substantive in nature, the amended statute must be applied to the instant cases, which were pending at the time of the amendment. See 1 V.S.A. § 213 ("No act of the General Assembly shall affect a suit begun or pending at the time of its passage, except acts regulating practice in court, relating to the competency of witnesses, or relating to amendments of process or pleadings."); see also <u>Ulm v. Ford Motor Co.</u>, 170 Vt. 281, 287-88, 750 A.2d 981, 987 (2000) (concluding that because subsections of safety belt statute "prohibit admissibility of a particular type of evidence, thereby regulating practice in court," they "are procedural rather than substantive" and "fall within § 213's exception"). The State does not challenge the retroactive application of the amended statute to the instant cases, but it asserts that nothing in the 2017 amendment prohibits the introduction of refusal evidence with respect to blood tests and that the Legislature intended only to comply with <u>Birchfield</u>, which does not prohibit admitting in a criminal DUI proceeding evidence of a refusal to submit to a blood test.

¶ 14.    "When construing a statute, our paramount goal is to effectuate the intent of the Legislature." <u>State v. Love</u>, 2017 VT 75, ¶ 9, ___ Vt. ___, 174 A.3d 761 (quotation omitted). We look first to the statutory language's plain meaning as an expression of legislative intent, but when

6

the statutory language is ambiguous or does not provide sufficient guidance to ascertain that intent, "the Court may look elsewhere to determine the legislative intent in order to provide a fair and reasonable construction of the statute." State v. Reed, 2017 VT 28, ¶ 20, ___ Vt. ___, 169 A.3d 1278. Further, "[t]estimony given to a committee of the Legislature may provide some clues as to the purpose of [an] amended statute." Id. In this case, the plain language of the statute does not make it clear whether the Legislature intended to exclude at a criminal DUI proceeding evidence of a refusal to submit to a blood test.

¶ 15. Our review of the legislative history reveals that the Legislature enacted the 2017 amendment to § 1202 to make Vermont's implied consent law compliant with the federal constitutional constraints imposed by the U.S. Supreme Court in Birchfield. The language amending § 1202 that ultimately became part of the more comprehensive Act 62 was initially introduced before the House Committee on Transportation as H. 146 and later H. 511. Legislative counsel explained to the committee that the bill was drafted to amend § 1202 so that it complied with the two main holdings in Birchfield barring under the Fourth Amendment warrantless blood tests as well as criminal prosecution for a refusal to consent to a warrantless blood test. Hearing on H.146 Before House Comm. on Transp., 2017-2018 Bien. Sess. (Vt. Mar. 1, 2017), at 1:45-2:30. Committee members repeatedly asked if the amendment satisfied the constitutional requirements of Birchfield. Legislative counsel, as well as attorneys representing the Defender General's Office and the Office of States' Attorneys, agreed that it did. At one point during his testimony before the Committee, legislative counsel stated that Birchfield held if one were to refuse a blood test, the refusal could not be introduced into a criminal proceeding. Id. at 21:40-22:02. He further stated that all of the changes to the statute were necessary to comport with Birchfield.[2] Id. at 22:15.

_____

[2] The dissent relies heavily on this passing statement from legislative counsel in arguing that the Legislature's intent was to prohibit the admission of refusals to take blood tests. As noted, however, the legislative history overwhelmingly demonstrates that the Legislature simply intended

7

¶ 16. Added to both H. 146 and H. 511 was the following statement of purpose, which was not included in the more comprehensive H. 503 that became Act 62:

> This bill proposes to make Vermont's implied consent statute consistent with the U.S. Supreme Court's decision in Birchfield v. North Dakota by providing that: (1) a warrant is required before a blood test can be given to a person suspected of DUI; and (2) a person cannot be criminally prosecuted for refusing to submit to the blood test.

See H.146, 2017-2018 Gen. Assem., Bien. Sess. (Vt. 2017) (bill as introduced), https://legislature.vermont.gov/assets/Documents/2018/Docs/BILLS/H-0146/H-0146%20As%20Introduced.pdf [https://perma.cc/853F-YF8X]; see also H.511, 2017-2018 Gen. Assem., Bien. Sess. (Vt. 2017) (bill as introduced), https://legislature.vermont.gov/assets/Documents/2018/Docs/BILLS/H-0511/H-0511%20As%20Introduced.pdf [https://perma.cc/DF9H-QFEG].

¶ 17. The State emphasizes that the 2017 amendment to 23 V.S.A. § 1202(b) does not explicitly prohibit the admission of a refusal to take a blood test. According to the State, construing the amendment as doing so would make it inconsistent with two other provisions of § 1202 that were left in place: (1) the provision in § 1202(d)(6) requiring officers to inform persons, among other things, that a refusal to take an evidentiary test "may be offered into evidence against the person at trial"; and (2) the provision in § 1202(f) that if a blood sample is obtained by search warrant, the refusal to take a blood test "may still be introduced in evidence, in addition to the results of the evidentiary test"—thereby retaining the notion that a refusal to take a blood test may be admitted when no test was obtained. (Emphasis added.)

_____

to make the implied consent statute compliant with the U.S. Supreme Court's decision in Birchfield. At best, from defendants' perspective, Birchfield was inconclusive on whether evidence of a refusal to take a blood test would be admissible in criminal DUI trials. The Legislature's decision to amend § 1202(b) so as not to either explicitly allow or disallow such refusal evidence may have been an attempt to immunize the statute against this uncertainty. In any event, the plain language of the amendment did not preclude admission of such refusals, and the Legislative history does not demonstrate that that was the Legislature's intent.

8

¶ 18.    We find little force to this argument, particularly given the fact that the Legislature also left in place the provisions in § 1201(b)-(c) criminalizing refusal to take "an evidentiary test" in certain situations, as well as the provision in § 1202(d)(6) that an officer must inform a person, among other things, that refusing to take "an evidentiary test" may result in that person being "charged with the crime of criminal refusal" if the person has a prior DUI conviction or is involved in an accident resulting in serious bodily injury or death to another.  The U.S. Supreme Court in Birchfield unequivocally prohibited a separate prosecution for a refusal to take a warrantless blood test.  Thus, it appears that the 2017 amendment simply failed to address all of the language in the implied consent statute that was inconsistent with that holding in Birchfield.

¶ 19.    Nevertheless, we conclude that, in enacting Act 62, the Legislature's sole intent was to ensure that Vermont's implied consent law comported with the constitutional constraints imposed by the U.S. Supreme Court in Birchfield.  The scope of those constitutional constraints is the precise question raised in these appeals—specifically, did those constraints extend to prohibit the admission in a criminal DUI prosecution of evidence of a refusal to submit to a blood test? Furthermore, insofar as the Legislature has not explicitly prohibited the admission of refusal evidence with respect to blood tests, the evidence is admissible in these cases unless we agree with defendants' constitutional challenge to admission of the evidence.  Cf. State v. Blouin, 168 Vt. 119, 122-23, 716 A.2d 826, 828 (1998) (concluding that in absence of any statutory language prohibiting introduction of refusal evidence, fact that statute specifically provided for admission of evidence of individual's refusal to submit to evidentiary breath test did not by implication suggest that refusal to submit to field sobriety test is not admissible).  "All relevant evidence is admissible, except as limited by constitutional requirements or as otherwise provided by statute or by these rules or by other rules prescribed by the Supreme Court."[3]  V.R.E. 402; see State v.

_____

[3]  Defendants have not challenged the relevance of the refusal evidence or argued that, in the context of a criminal DUI prosecution under the implied consent law, the prejudicial impact of the evidence outweighs its probative value.  See State v. Farrow, 2016 VT 30, ¶ 17, 201 Vt. 437,

9

Curavoo, 156 Vt. 72, 74-75, 587 A.2d 963, 964-65 (1991) (rejecting defendant's argument that trial court erred by admitting evidence of refusal to perform field dexterity tests, insofar as defendant failed to cite rule excluding such evidence); see also Farrow, 2016 VT 30, ¶¶ 1, 14-18, 22-26 (rejecting evidentiary and constitutional challenges to admitting evidence of refusal to perform field dexterity tests without regard to whether defendant was warned that refusal could be admitted in criminal proceeding). Accordingly, we cannot avoid the constitutional issue raised herein based on the 2017 amendment to Vermont's implied consent law.

### III. Fourth Amendment

¶ 20. As noted above, the question at the heart of the constitutional issue before us is whether the U.S. Supreme Court's decision in Birchfield prohibits, pursuant to the Fourth Amendment of the U.S. Constitution, admitting at a criminal DUI proceeding a defendant's refusal to submit to a warrantless blood test. Before examining Birchfield, we review prior relevant U.S. Supreme Court law.

¶ 21. Over sixty years ago, in Breithaupt v. Abram, 352 U.S. 432 (1957), the Court considered a challenge to a warrantless blood draw from an unconscious driver who had been involved in a fatal accident and was convicted of involuntary manslaughter. The Court summarily rejected the petitioner's arguments grounded on the Fourth and Fifth Amendments because at that time the Court had not yet extended those rights through the Fourteenth Amendment to state defendants charged with state crimes. 352 U.S. at 434. The Court did consider, however, whether the petitioner was deprived of his right to due process on the basis that the blood draw offended

---

144 A.3d 1036 (stating that under Vermont Rule of Evidence 401 evidence is relevant if it tends to make the existence of any material fact more or less probable than it would be without that evidence, and concluding that refusal to perform field dexterity exercises was relevant to consciousness of guilt even if defendant could provide other explanations for refusal); see also State v. Stevens, 154 Vt. 614, 619, 580 A.2d 493, 496 (1990) (concluding that evidence of refusal was relevant because prosecution "was entitled to let the jury know that because defendant refused to perform breath or dexterity tests, the State's evidence was limited to the arresting officer's observations of defendant").

that sense of justice that the Court had relied on in a prior opinion finding a due process violation. Noting that blood tests had "become routine in our everyday life" and that an "increasing slaughter on our highways" had reached "astounding figures only heard of on the battlefield," the Court concluded, in considering whether petitioner was deprived of his right to due process, that "so slight an intrusion as is involved in applying a blood test" was "far outweighed" by society's interest in a scientific determination of intoxication to avoid "one of the great causes of the mortal hazards of the road." Id. at 438-39.

¶ 22.   A decade later, in Schmerber v. California, 384 U.S. 757 (1966), after the U.S. Supreme Court had extended the protections of the Fourth and Fifth Amendments to state defendants through the Due Process Clause of the Fourteenth Amendment, the Court considered a challenge to a warrantless blood draw from a driver who had been injured in an automobile accident.  In addition to upholding its decision in Breithaupt, the Court held that the warrantless blood draw violated neither (1) the privilege against self-incrimination contained in the Fifth Amendment because the withdrawal and analysis of blood was not testimonial in nature and therefore did not compel the petitioner to testify against himself, Schmerber, 384 U.S. at 760-65; nor (2) the protection against unreasonable searches and seizures contained in the Fourth Amendment because the warrantless blood draw incident to arrest was appropriate when there was no time to obtain a warrant, id. at 767-72.

¶ 23.   Seventeen years later, in South Dakota v. Neville, 459 U.S. 553, 554 (1983), the Court held that admitting at a criminal DUI trial a defendant's refusal to submit to a blood-alcohol test does not offend the Fifth Amendment's privilege against self-incrimination.  The South Dakota statute at issue permitted a suspect to refuse the test but penalized the refusal by revoking for one year the suspect's license, which the Court called an "unquestionably legitimate" penalty "assuming appropriate procedural protections," and "by allowing the refusal to be used against the defendant at trial."  Id. at 559-60.  With respect to admitting evidence of the refusal, the Court

11

found "considerable force" to the reasoning that a refusal was a physical act analogous to an escape from custody, but ultimately relied on another basis in concluding that the Fifth Amendment was not offended—namely, because "no impermissible coercion is involved when the suspect refuses to submit to take the test." Id. at 560-62. The Court reasoned that the state was not directly compelling suspects to refuse the test because it was giving them a choice whether to take or refuse it; however, this reasoning was based in part on the consideration "that the state could legitimately compel the suspect, against his will, to accede to the test"—a consideration later negated by the Birchfield holding at issue here. Id. at 562-63. The Court further reasoned that the lack of coercion is bolstered by the reality that the state wants the suspect to choose to take the test because "the inference of intoxication arising from a positive blood-alcohol test is far stronger than that arising from a refusal to take the test." Id. at 564. Accordingly, the Court held "that a refusal to take a blood-alcohol test, after a police officer has lawfully requested it, is not an act coerced by the officer, and thus is not protected by the privilege against self-incrimination." Id. at 564.

¶ 24.  In so holding, the Court expressly distinguished Doyle v. Ohio, 426 U.S. 610, 611 (1976), in which the Court ruled that the Due Process Clause forbids a prosecutor from using a defendant's silence after Miranda warnings to impeach the defendant's testimony at trial. The Court in Neville reasoned that: (1) the right to silence following Miranda warnings "is one of constitutional dimension, and thus cannot be unduly burdened"; (2) a suspect's right to refuse a blood-alcohol test "is simply a matter of grace bestowed by the South Dakota legislature"; and (3) contrary to Miranda warnings, which provide assurances that the suspect's silence will not be used against the suspect, in the DUI context suspects are given no such assurances but in fact are told of negative repercussions that will result from a refusal. 459 U.S. at 565-66.

¶ 25.  Three years before the Birchfield decision, in Missouri v. McNeely, 569 U.S. 141, 156 (2013), the Court held that whether exigent circumstances existed so as to preclude the necessity of obtaining a warrant for a nonconsensual blood test in drunk driving cases had to be

12

decided on a case-by-case basis after considering the totality of the circumstances. The Court concluded that the natural metabolization of alcohol in the bloodstream does not, in and of itself, create a per se exigency. Id. at 152-53. While recognizing "the magnitude of the drunken driving problem [and] the state's interest in eradicating it," the Court stated that the reduced privacy accorded to drivers on state highways "does not diminish a motorist's privacy interest in preventing an agent of the government from piercing the skin." Id. at 159-60 (plurality opinion) (quotation omitted). The Court concluded that the state interest, while important, "does not justify departing from the warrant requirement without showing exigent circumstances that make securing a warrant impractical in a particular case." Id. at 160 (plurality opinion).

¶ 26. In support of this reasoning, the Court pointed out that the states "have a broad range of legal tools to enforce their drunk-driving laws and to secure BAC evidence without undertaking warrantless nonconsensual blood draws." Id. at 160-61 (plurality opinion). The Court noted that all fifty states have implied consent laws conditioning the operation of motor vehicles on consent to BAC testing upon arrest or detention for DUI and that such laws impose significant consequences when a motorist withdraws consent, including immediate suspension of the motorist's license and allowing "the motorist's refusal to take a BAC test to be used as evidence against him in a subsequent criminal prosecution." Id. at 161 (plurality opinion).

¶ 27. Against this legal background, the Court in Birchfield considered "whether motorists lawfully arrested for drunk driving may be convicted of a crime or otherwise penalized for refusing to take a warrantless test measuring the alcohol in their bloodstream." ___ U.S. at ___, 136 S. Ct. at 2172. The Court began its opinion by acknowledging the "grisly toll on the Nation's roads" taken by drunk drivers, the necessity of testing, and the reality that "many drivers stopped on suspicion of drunk driving would not submit to testing if given the option." Id. at ___, 136 S. Ct. at 2166. As the result, as the Court noted, all fifty states have enacted implied consent laws that condition the privilege of driving on cooperating with BAC testing. Id. at ___, 136 S.

13

Ct. at 2168-69. The initial legal consequences imposed by the states for refusing to submit to testing were suspension or revocation of the motorist's driver's license and admission of the motorist's refusal "as evidence of likely intoxication in a drunk-driving prosecution." Id. at ___, 136 S. Ct. at 2169. Recognizing, however, that repeat offenders subject to more severe penalties had an incentive to refuse testing, some states, including Vermont, enacted laws making it a crime to refuse to submit to testing. Id., 136 S. Ct. at 2169. In Birchfield, the Court considered the constitutionality of prosecuting motorists for the crime of refusal in three contexts: a refusal to submit to a warrantless blood test, a refusal to submit to a warrantless breath test, and consent to submit to a blood test after being warned that refusal would be a crime subject to prosecution.

¶ 28. The Court first considered the search-incident-to-arrest exception to a warrantless search of a driver's breath or blood. In determining whether to exempt each of these searches from the warrant requirement, the Court weighed the degree to which the search intrudes upon an individual's privacy against the degree to which the search is needed to promote legitimate government interests. Id. at ___, ___, 136 S. Ct. at 2176-77, 2186 (noting that "reasonableness is always the touchstone of Fourth Amendment analysis"). With regard to breath tests, the Court concluded that the states' paramount interest in reducing the carnage caused by impaired drivers outweighed the minimal physical intrusion of, and limited information available from, a breath test. Id. at ___, ___, 136 S. Ct. at 2176-78, 2184. In discussing the states' interests, the Court noted that state courts "would be swamped" if search warrants were required for every search incident to arrest not involving exigent circumstances. Id. at ___, 136 S. Ct. at 2180. The Court also noted that two basic reasons for requiring a search warrant—having an independent neutral magistrate ensure the existence of probable cause and limiting the scope of the search upon a finding of probable cause—are diminished in the context of a DUI stop because: (1) a magistrate is in a poor position to challenge an officer's characterization of the indicia of impairment that are

largely the same from one drunk driving stop to another; and (2) the scope of the warrant is simply administering the test. Id. at ___, 136 S. Ct. at 2181.

¶ 29.   The Court concluded, however, that the states' interests could not overcome the heightened privacy interests implicated by blood testing, which is physically more invasive and potentially provides far more information about the individual than that provided by a breath test. Id. at ___, ___, 136 S. Ct. at 2178, 2184-85. The Court acknowledged that blood tests are capable of detecting drugs other than alcohol, but it concluded that police could obtain a warrant when there was sufficient time to do so. Id. at ___, 136 S. Ct. at 2184.

¶ 30.   Having concluded that the search-incident-to-arrest exception did not justify the taking of a warrantless blood sample, the Court then addressed whether implied consent laws established a consent exception to the need for a warrant. In addressing this question, the Court first recognized its approval in prior opinions "of implied-consent laws that impose civil penalties and evidentiary consequences on motorists who refuse to comply." Id. at ___, 136 S. Ct. at 2185. The Court stated that "nothing we say here should be read to cast doubt on them." Id., 136 S. Ct. at 2185. But the Court drew the line at criminalizing a refusal to consent to a blood draw:

> It is another matter, however, for a State not only to insist upon an intrusive blood test, but also to impose criminal penalties on the refusal to submit to such a test. There must be a limit to the consequences to which motorists may be deemed to have consented by virtue of a decision to drive on public roads.

Id., 136 S. Ct. at 2185 (emphasis added). Accordingly, the Court "conclude[d] that motorists cannot be deemed to have consented to submit to a blood test on pain of committing a criminal offense." Id. at ___, 136 S. Ct. at 2186 (emphasis added). In short, the Court went out of its way to endorse the constitutionality of implied consent laws and strongly suggested that consequences for refusing a blood test short of criminal prosecution—such as civil and evidentiary consequences—were not constitutionally infirm.

15

¶ 31. Since Birchfield issued, several state courts have acknowledged that strong suggestion in holding that the Fourth Amendment does not bar admission of evidence of refusal to submit to a warrantless blood draw. For example, in Fitzgerald v. People, 2017 CO 26, ¶¶ 1, 9, 27, 394 P.3d 671, the Colorado Supreme Court rejected the defendant's argument that the admission of evidence of a refusal to submit to a blood test violated his Fourth Amendment right to be free from unreasonable searches by penalizing the exercise of that right. After analyzing prior U.S. Supreme Court law, the court stated, with respect to the Birchfield decision:

> [W]hen there has been no search, the Supreme Court has all but said that anything short of criminalizing refusal does not impermissibly burden or penalize a defendant's Fourth Amendment right to be free from an unreasonable warrantless search. We take that short leap today and conclude that introducing evidence of [the defendant's] refusal to consent to a blood or breath test to determine his BAC did not impermissibly burden his Fourth Amendment right.

Id. ¶ 26; see State v. Storey, 2018-NMCA-009, ¶¶ 1, 39, 41, 410 P.3d 256 (2017), cert. denied, No. S-1-SC-36695 (N.M. Oct. 31, 2017) (concluding that under Birchfield, "a state cannot criminally punish an individual for refusing to submit to a warrantless blood draw," but "that the constitutional proscription announced in Birchfield does not extend to the introduction of evidence of, or a prosecutor's comment on, such refusal to consent"); Commonwealth v. Bell, 167 A.3d 744, 745, 750 (Pa. Super. Ct. 2017) (concluding that it is constitutionally permitted under Fourth Amendment, as interpreted in Birchfield, to deem that motorists have consented to admission in criminal DUI proceedings of evidence of refusal to take blood test); see also State v. Arrellano, No. 116,448, 2018 WL 1352571, at *7-8 (Kan. Ct. App. March 16, 2018) (per curiam) (relying on Birchfield in concluding that Fourth Amendment does not preclude admission of evidence of refusal to take breath test); People v. Vital, No. 2016NY041707, 2017 WL 350797, at *2 (N.Y. Crim. Ct. Jan. 20, 2017) (concluding that admission of evidence of refusal to take blood test is admissible in DUI criminal proceeding under Birchfield's interpretation of Fourth Amendment); State v. Mitchell, 2018 WI 84, ¶¶ 36-37, ___ N.W.2d ___ (holding that Wisconsin's implied

consent statute does not violate Fourth Amendment under <u>Birchfield</u> holding because statute imposes only civil and evidentiary consequences for refusing blood draws).  But see 2 W. LaFave et al., Criminal Procedure § 3.10(b), at 18-19 (4th ed. Supp. 2017) (finding <u>Birchfield</u>'s assertion regarding evidentiary consequences "misleading at best" because whether refusal evidence is permitted depends on whether requested warrantless search is constitutionally permissible); 4 W. LaFave, Search & Seizure § 8.2(l), at 23-23 (5th ed. Supp. 2017) (same).

¶ 32.   We join these courts in concluding that the Fourth Amendment does not bar admission in a criminal DUI proceeding of evidence of a refusal to submit to a warrantless blood draw.  Although the Fourth Amendment protects a motorist from a nonconsensual warrantless submission to a blood draw, and the implied consent law in and of itself does not supply that consent with respect to a separate criminal prosecution for refusal, "the Constitution does not forbid 'every government-imposed choice in the criminal process that has the effect of discouraging the exercise of constitutional rights.' " <u>Jenkins v. Anderson</u>, 447 U.S. 231, 236 (1980) (quoting <u>Chaffin v. Stynchcombe</u>, 412 U.S. 17, 30 (1973)) (concluding that prosecutor's cross-examination of defendant on his prearrest silence is not constitutionally barred).  Indeed, as the U.S. Supreme Court stated in <u>McGautha v. California</u>:

> The criminal process, like the rest of the legal system, is replete with situations requiring the making of difficult judgments as to which course to follow.  Although a defendant may have a right, even of constitutional dimensions, to follow whichever course he chooses, the Constitution does not by that token always forbid requiring him to choose.

402 U.S. 183, 213 (1971) (quotation and citation omitted); see <u>Hynes v. State</u>, 801 S.E.2d 306, 311 (Ga. Ct. App. 2017) (stating that "choice to submit or refuse to submit to the analysis of one's blood, breath, urine or other bodily substance will not be an easy or pleasant one to make, but the criminal process often requires suspects and defendants to make difficult choices" (quotations omitted)); see also K. Melilli, <u>The Consequences of Refusing Consent to a Search or Seizure: The Unfortunate Constitutionalization of an Evidentiary Issue</u>, 75 S. Cal. L. Rev. 901, 910-11 (2002)

17

(citing numerous situations in which U.S. Supreme Court has permitted indirectly penalizing constitutional rights in context of criminal trial).

¶ 33. "The threshold question is whether compelling the election impairs to an appreciable extent any of the policies behind the rights involved." McGautha, 402 U.S. at 213 (concluding that privilege against self-incrimination is not violated when defendant's choice to testify opens door to otherwise inadmissible evidence). "In determining whether a constitutional right has been burdened impermissibly, it . . . is appropriate to consider the legitimacy of the challenged governmental practice." Jenkins, 447 U.S. at 238. Practices that enhance the reliability of the criminal process and its truth-seeking function may be permitted, even if a constitutional right is burdened. See id.

¶ 34. The Court in Birchfield generally endorsed the constitutionality of implied consent laws, including the civil and evidentiary consequences stemming from those laws, but "conclude[d] that motorists cannot be deemed to have consented to submit to a blood test on pain of committing a criminal offense." ___ U.S. at ___, 136 S. Ct. at 2185-86 (emphasis added). The Court's concern was that the threat of criminal prosecution for the refusal itself was likely to coerce consent to an invasive blood test. See Commonwealth v. Myers, 164 A.3d 1162, 1178 (Pa. 2017) ("[T]he Supreme Court's holding 'that motorists cannot be deemed to have consented to submit to a blood test on pain of committing a criminal offense' appears to be premised upon the coercive effect of the threat of criminal punishment, inasmuch as such coercion may render one's consent involuntary." (quoting Birchfield, ___ U.S. at ___, 136 S. Ct. at 2186)); see also State v. Yong Shik Won, 372 P.3d 1065, 1081 (Haw. 2015) ("Where arrest, conviction, and imprisonment are threatened if consent to search is not given, the threat infringes upon and oppresses the unfettered will and free choice of the person to whom it is made, whether by calculation or effect."). In essence, the Court in Birchfield concluded that the nature of the choice offered to defendant under implied consent laws is fundamentally altered—to the point where it infringes impermissibly on

18

the Fourth Amendment—only when the alternative to submitting to a warrantless blood draw is to commit a crime—the crime of refusal.

¶ 35.    As the Court suggested, however, the admission of evidence of a refusal to submit to a blood draw is a qualitatively different consequence with respect to its burden on the Fourth Amendment. Criminalizing refusal places far more pressure on defendants to submit to the blood test—thereby impermissibly burdening the constitutionally protected right not to submit to the test—than merely allowing evidence of the refusal at a criminal DUI trial, where a defendant can explain the basis for the refusal and the jury can consider the defendant's explanation for doing so. Moreover, the admission of refusal evidence in the context of a DUI proceeding, without directly burdening the privacy interest protected by the Fourth Amendment,[4] furthers the reliability of the criminal process and its truth-seeking function by allowing the jurors to understand why the State is not submitting an evidentiary test in a DUI prosecution. See Stevens, 154 Vt. at 619, 580 A.2d at 496 (concluding that evidence of refusal was relevant because prosecution "had to prove intoxication" and "was entitled to let the jury know that because defendant refused to perform breath or dexterity tests, the State's evidence was limited to the arresting officer's observations of defendant").

¶ 36.    The implied consent statute establishes a bargain in which, in exchange for the privilege of engaging in the potentially dangerous activity of operating a motor vehicle on the highway, motorists impliedly consent to testing for impaired driving to protect the public. State v. Morale, 174 Vt. 213, 217, 811 A.2d 185, 188 (2002). The critical question is whether civil or criminal sanctions resulting from motorists' revocation of their implied consent unconstitutionally

_____

        [4] Unlike the Fifth Amendment, the Fourth Amendment is aimed at protecting privacy, not self-incrimination. "[I]f the government were to introduce at trial evidence of the defendant's refusal to consent to a search to prove consciousness of guilt, the defendant perhaps will have suffered the undesirable consequence of some incremental incrimination, but the defendant's privacy—the policy behind the Fourth Amendment—will not have suffered directly at all." Melilli, supra, at 913.

19

coerce them to submit to testing. In <u>Birchfield</u>, the U.S. Supreme Court has ruled, with respect to the more invasive blood test, that only criminalizing the revocation of implied consent crosses the line in terms of impermissibly burdening the Fourth Amendment.

¶ 37. But allowing evidence of a refusal to submit to a blood test in the context of a DUI prosecution does not warrant the same constitutional protection. "The speculative conclusion that a citizen will consent to a search that he or she would otherwise resist solely to avoid evidentiary implications at a possible future trial seems too attenuated to meet the [U.S. Supreme] Court's test in practice." Melilli, <u>supra</u>, at 913. Indeed, as the Court in <u>Birchfield</u> pointed out, states began criminalizing refusals because the other civil and evidentiary consequences provided an insufficient incentive for motorists—most particularly repeat DUI offenders—to submit to testing. ___ U.S. at ___, 136 S. Ct. at 2169.

¶ 38. In support of the trial court's ruling, defendants cite caselaw in which courts have refused to admit evidence of a defendant's refusal to permit a warrantless search of a home or vehicle. See, e.g., <u>United States v. Runyan</u>, 290 F.3d 223, 249 (5th Cir. 2002) (citing federal circuit courts that have "held that a defendant's refusal to consent to a warrantless search may not be presented as evidence of guilt"); <u>United States v. Moreno</u>, 233 F.3d 937, 941 (7th Cir. 2000) (citing courts that have relied on U.S. Supreme Court self-incrimination cases to hold or suggest "that the government may not cite a defendant's refusal to consent to a search of his home as evidence that he knew the search would produce incriminating evidence"); <u>Bosse v. State</u>, 2015 OK CR 14, ¶¶ 30-36, 360 P.3d 1203 (citing federal and state courts that have relied upon U.S. Supreme Court self-incrimination cases to hold that "the exercise of the Fourth Amendment right to refuse consent to search is not admissible as substantive evidence of guilt"), vacated on other grounds by <u>Bosse v. Oklahoma</u>, ___ U.S. ___, 137 S. Ct. 1 (2016). But see <u>Frank v. Chavez</u>, 65 F. Supp. 3d 677, 685 (N.D. Cal. 2014) (noting that U.S. Supreme Court has not extended to Fourth Amendment its

20

holding that "a defendant's exercise of his Fifth Amendment right to remain silent may not be admitted to show evidence of guilt").

¶ 39.    None of these cases, which stem from United States v. Prescott, 581 F.2d 1343, 1350-51 (9th Cir. 1978), involve DUI prosecutions or implied consent laws, and they ultimately conclude that admission of evidence of a refusal to search a home, car, or other property impermissibly burdens the Fourth Amendment.  For the reasons stated above, that is not the case in the context of a DUI criminal prosecution pursuant to an implied consent law, where the scope of the requested search is a targeted one following arrest based on suspicion of impaired driving. "The case law interpreting implied consent laws demonstrates that the judiciary overwhelmingly sanctions the use of civil penalties and evidentiary consequences against DUI suspects who refuse to comply."  MacMaster v. State, 809 S.E.2d 478, 485 (Ga. Ct. App. 2018) (brackets and quotation omitted) ("A defendant's refusal to consent to a warrantless search of his vehicle or other property is quite a different issue from a defendant's refusal to submit to a blood or urine test for determining alcohol or drug content."  (brackets and quotations omitted)).  Accordingly, we conclude that the admission of evidence of a refusal to submit to a blood test in the context of a DUI criminal proceeding does not violate the Fourth Amendment of the U.S. Constitution.

Reversed and remanded.

FOR THE COURT:

Chief Justice

¶ 40.    **ROBINSON J., dissenting.**    I would dismiss these appeals as moot.  The Legislature has amended the implied consent statute to eliminate the provision authorizing the State to introduce evidence of a defendant's refusal to submit to a warrantless blood test.  I base this conclusion on the plain language of the Legislature's 2017 statutory amendment, as well as

21

the Legislature's purpose in amending the statute understood in light of the legislative history. Because this new evidentiary rule undisputedly applies to these pending cases, I dissent.

¶ 41. Following the U.S. Supreme Court's decision in <u>Birchfield v. North Dakota</u>, __ U.S. __, 136 S.Ct. 2160 (2016), the Legislature amended Vermont's implied consent statute, as it relates to warrantless blood tests, as follows:

> § 1202. Consent to taking of tests to determine blood alcohol content <u>or presence of other drug</u>
>
> (a)(1) Implied consent. Every person who operates, attempts to operate, or is in actual physical control of any vehicle on a highway in this State is deemed to have given consent to an evidentiary test of that person's breath for the purpose of determining the person's alcohol concentration or the presence of other drug in the blood. The test shall be administered at the direction of a law enforcement officer.
>
> (2) Blood test. If breath testing equipment is not reasonably available or if the officer has reason to believe that the person is unable to give a sufficient sample of breath for testing or if the law enforcement officer has reasonable grounds to believe that the person is under the influence of a drug other than alcohol, the person is deemed to have given consent to the taking of an evidentiary sample of blood. If in the officer's opinion the person is incapable of decision or unconscious or dead, it is deemed that the person's consent is given and a sample of blood shall be taken. <u>A blood test sought pursuant to this subdivision (2) shall be obtained pursuant to subsection (f) of this section.</u>
>
> (3) Evidentiary test. The evidentiary test shall be required of a person when a law enforcement officer has reasonable grounds to believe that the person was operating, attempting to operate, or in actual physical control of a vehicle in violation of section 1201 of this title.
>
> (4) Fatal collision or incident resulting in serious bodily injury. The evidentiary test shall also be required if the person is the surviving operator of a motor vehicle involved in a fatal incident or collision or an incident or collision resulting in serious bodily injury and the law enforcement officer has reasonable grounds to believe that the person has any amount of alcohol or other drug in his or her system.
>
> (b) ~~If the person refuses to submit to an evidentiary test it shall not be given, except as provided in subsection (f) of this section, but the~~

22

A refusal to take a breath test may be introduced as evidence in a criminal proceeding.

 . . . .

   (f) If a blood test is sought from a person pursuant to subdivision (a)(2) of this section, or if a person who has been involved in an accident or collision resulting in serious bodily injury or death to another refuses an evidentiary test, a law enforcement officer may apply for a search warrant pursuant to Rule 41 of the Vermont Rules of Criminal Procedure to obtain a sample of blood for an evidentiary test. If a blood sample is obtained by search warrant, the fact of the refusal may still be introduced in evidence, in addition to the results of the evidentiary test. Once a law enforcement official begins the application process for a search warrant, the law enforcement official is not obligated to discontinue the process even if the person later agrees to provide an evidentiary breath sample. The limitation created by Rule 41(g) of the Vermont Rules of Criminal Procedure regarding blood specimens shall not apply to search warrants authorized by this section.

2017, No. 62, § 9. At issue is the impact of these amendments on the admissibility for evidentiary purposes of an individual's refusal to take a warrantless blood test.

¶ 42.    The only plausible understanding of the Legislature's intent in amending 12 V.S.A. § 1202(b) is that it intended to eliminate the statute's authorization of the use in a criminal proceeding of refusal evidence with respect to blood tests. The Legislature amended a section that previously authorized evidentiary use of refusals of both warrantless breath and blood tests so that it only authorized evidentiary use of refusals of warrantless breath tests. The majority's suggestion that the State could introduce evidence of blood test refusals before the statutory amendment, and could continue to do so afterwards, renders the 2017 amendment to § 1202(b) entirely meaningless. "We presume that the Legislature intended to change the meaning of a statute when it amends it . . . . " State v. Thompson, 174 Vt. 172, 178, 807 A.2d 454, 460 (2002); see also Stone v. I.N.S., 514 U.S. 386, 397 (1995) ("When Congress acts to amend a statute, [courts] presume it intends its amendment to have real and substantial effect."). There is no suggestion that this amendment served some sort of clarifying purpose. See Thompson, 174 Vt. at 178, 807 A.2d at 460. In fact, understood as the majority construes it, the statute makes little sense: it will expressly authorize

23

introduction of evidence of a refusal of a warrantless breath test, say nothing about the use as evidence of a refusal of a warrantless blood test, but nevertheless intend to allow evidentiary use of both. This was not a complex amendment that changed lots of statutory sections; other than the two amendments specifically dealing with the requirement of a warrant as a predicate to a blood test, the only other language change was the elimination of authorization to admit evidence of a refusal of a blood test.

¶ 43.    The amendment was imperfect insofar as the Legislature failed to conform all of the relevant statutory language to its amendment to § 1202(b). See, e.g., id. § 1202(d)(6) (authorizing introduction of evidence of a refusal to take an evidentiary test, as opposed to just breath test, as evidence at trial). But the Legislature's intent was clear, and to the extent that the new language is in tension with some of the pre-existing language, the Legislature's more recent enactment trumps. See State v. Lynch, 137 Vt. 607, 610, 409 A.2d 1001, 1004 (1979) (explaining that where "there are two statutes upon the same subject that are in irreconcilable conflict, the statute which is the more recent legislative enactment will control, since it is the latest expression of the legislative will").

¶ 44.    The majority doesn't lean too heavily on the language of the statute, instead relying on its understanding of the Legislature's intent. The majority reasons, essentially: (1) the Legislature intended only to bring Vermont's implied consent statute into conformity with Birchfield; (2) the majority has concluded that Birchfield does not preclude states from allowing the use of evidence of an individual's refusal to submit to a warrantless blood test; (3) therefore, the Legislature did not intend to amend Vermont's implied consent statute to preclude the use of evidence of an individual's refusal to submit to a warrantless blood test.

¶ 45.    But the legislative history candidly acknowledged by the majority knocks the legs out from under this line of reasoning. If statutory language is ambiguous, "we also look at the legislative history and circumstances surrounding its enactment, and the legislative policy it was

24

designed to implement" in construing the statute. Dep't of Corr. v. Human Rights Comm'n, 2006 VT 134, ¶ 22, 181 Vt. 225, 917 A.2d 451 (quotation omitted). There is little doubt that the Legislature's goal was to bring Vermont law into compliance with Birchfield. But, as the majority acknowledges, the language of the amendment was drafted with the understanding that Birchfield prohibits admission of evidence of a refusal of a warrantless blood test in a criminal proceeding. In walking through the draft that the Legislature ultimately enacted as Act No. 62, legislative counsel advised the House Judiciary Committee that in addition to its two main holdings, prohibiting a warrantless blood test and prohibiting criminal prosecution of a refusal of a warrantless blood test, Birchfield prohibits the introduction as evidence in a criminal proceeding of a person's refusal to submit to a warrantless blood test. Hearing on H.146 Before House Comm. on Transp., 2017-2018 Bien. Sess. (Vt. March 1, 2017), at 21:40. Counsel represented to the committee that the proposed amendments were designed to bring Vermont's statute into compliance with all three of these requirements, including the requirement relating to the use of refusal evidence. Id. at 22:15.

¶ 46. The majority may now have concluded that this understanding of Birchfield was wrong, and that the case establishes no such requirement. But it's the Legislature's actual understanding of the constitutional constraints it sought to accommodate, not this Court's later determination of the constitutional question, that gives us insight into the Legislature's intended meaning. To say that, had the Legislature known how this Court would rule on the constitutional issue, it would not have changed the implied consent statute to preclude admission into evidence of an individual's refusal of a warrantless blood test is to substitute the majority's judgment about what the Legislature would have done if it had accurately anticipated the majority's ruling for an assessment of what it actually did given its own understanding. What the Legislature did is apparent from the language of Act No. 62, and is entirely consistent with the Legislature's apparent understanding of its constitutional responsibilities at the time it amended the statute.

25

¶ 47. The State does not dispute that insofar as the statute purported to amend a rule governing the admissibility of evidence, it regulates court practice and is thus applicable in proceedings subsequent to the statute's enactment, regardless of whether the statute was in effect at the time of the underlying act for which defendant was charged. See Ulm v. Ford Motor, 170 Vt. 281, 287-88, 750 A.2d 981, 987 (2000). Accordingly, because I conclude that 23 V.S.A. § 1202(b) now precludes the admission of evidence of an individual's refusal of a warrantless blood test, I would dismiss this interlocutory appeal as moot.

¶ 48. I am authorized to state that Judge Davenport joins this dissent.


_____
Associate Justice