**[J-103-2018]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**


**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**


| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 11 MAP 2018 |
| | : | |
| Appellee | : | Appeal from the Order of the Superior |
| | : | Court at No. 1490 MDA 2016, dated |
| | : | July 19, 2017, Reconsideration |
| v. | : | Denied September 26, 2017, |
| | : | Reversing the Order of the Court of |
| | : | Common Pleas of Lycoming County, |
| THOMAS S. BELL, | : | Criminal Division, at No. CP-41-CR- |
| | : | 0001098-2015, dated August 19, 2016 |
| Appellant | : | and Remanding for Sentencing. |
| | : | |
| | : | SUBMITTED:  November 30, 2018 |


**OPINION**


**JUSTICE DOUGHERTY**                                              **DECIDED:  July 17, 2019**

We granted discretionary review to determine whether Section 1547(e) of the

Vehicle Code, 75 Pa.C.S. §1547(e),[1] which expressly allows the Commonwealth to

introduce evidence at trial that a defendant charged with Driving Under the Influence

(DUI) refused to submit to chemical testing, violates the Fourth Amendment to the United

---

[1] Section 1547(e) provides, "[i]n any summary proceeding or criminal proceeding in which
the defendant is charged with a violation of [75 Pa.C.S. §3802 (Driving Under the
Influence)] or any other violation of this title arising out of the same action, the fact that
the defendant refused to submit to chemical testing as required by [75 Pa.C.S. §1547(a)
(deeming drivers to have given consent to chemical testing)] may be introduced in
evidence along with other testimony concerning the circumstances of the refusal.  No
presumptions shall arise from this evidence but it may be considered along with other
factors concerning the charge."  75 Pa.C.S. §1547(e).

States Constitution[2] or Article I, Section 8 of the Pennsylvania Constitution.[3] We conclude the evidentiary consequence authorized by Section 1547(e) is constitutional. Accordingly, we affirm the order of the Superior Court.

Following his arrest on suspicion of DUI on May 16, 2015, appellant Thomas Bell was transported to the Lycoming County DUI Center. N.T. 4/28/16 at 37. At the DUI Center, Detective Douglas Litwhiler read the PennDOT DL-26 form to appellant and he refused to submit to a blood test. *Id.* at 38. Appellant was subsequently charged with DUI — general impairment, 75 Pa.C.S. §3802(a)(1), and a summary traffic offense for failing to use required lighting, 75 Pa.C.S. §4302(a)(1).

Appellant filed a pre-trial motion to dismiss arguing he had a constitutional right to refuse to submit to a warrantless blood test and thus evidence of his refusal should be suppressed and the DUI charge dismissed. *See* Appellant's Motion to Dismiss, 3/8/16 at 5. The trial court denied the motion on April 28, 2016, and appellant proceeded to a nonjury trial that same day. N.T. 4/28/16 at 6. During trial, Detective Litwhiler testified regarding appellant's refusal to submit to blood testing and his assertion he did not want a needle in his arm because he had previously contracted hepatitis from a hospital needle. *Id.* at 38. At the conclusion of trial, appellant was found guilty of all charges.

---

[2] The Fourth Amendment to the United States Constitution states as follows: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV.

[3] Article I, Section 8 of the Pennsylvania Constitution states as follows: "The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant." PA. CONST. art. I, §8.

Appellant filed a motion for reconsideration. Appellant specifically argued the United States Supreme Court's decision in *Birchfield v. North Dakota*, __ U.S.__, 136 S.Ct. 2160 (2016),[4] precludes states from penalizing DUI defendants for refusing to submit to warrantless blood testing and, because he was convicted of DUI based on his refusal, his DUI charge should have been dismissed or, alternatively, he should be granted a new trial at which evidence of his refusal would be inadmissible. *See* Appellant's Motion for Reconsideration, 7/1/16 at 2. The trial court ruled the matter was "clearly controlled [by] *Birchfield*'s main point: a warrantless blood test violates a defendant's right to be free from unreasonable searches and he thus has a constitutional right to refuse it, which refusal cannot provide the basis for him to be convicted of a crime or otherwise penalized." Trial Court Op., 8/19/16 at 5 (emphasis omitted). The trial court ultimately determined appellant was entitled to a new trial because the court had relied on his refusal as a basis for the DUI conviction. *Id.*

The Commonwealth filed an interlocutory appeal to the Superior Court pursuant to Pa.R.A.P. 311(a)(6) (new trial awarded and Commonwealth claims trial court committed error of law). The Commonwealth argued *Birchfield* did not alter the admissibility of refusal evidence to show consciousness of guilt. The Commonwealth noted the *Birchfield* Court explicitly stated it had previously approved of "'implied-consent laws that impose civil penalties and evidentiary consequences on motorists who refuse to comply . . . and nothing we say here should be read to cast doubt on them.'" Commonwealth's Superior Court Brief at 11 (emphasis omitted), *quoting Birchfield*, 136 S.Ct. at 2185. The Commonwealth further contended scenarios involving implied consent are distinguishable from other situations, such as an individual's refusal to consent to a

---

[4] *Birchfield* was decided on June 23, 2016, after appellant's April 2016 trial and his March 2016 pre-trial motion to dismiss.

warrantless search of his home, where such refusal would be inadmissible at trial. *Id.* at 13. Appellant responded that *Birchfield* created a constitutional right to refuse a warrantless blood test and the admission of his refusal was improper as it penalized him for exercising this constitutional right. Appellant's Superior Court Brief at 4.

A three-judge panel of the Superior Court reversed the trial court's order granting appellant a new trial and remanded the case for sentencing. *Commonwealth v. Bell*, 167 A.3d 744, 750 (Pa. Super. 2017). The panel reviewed Pennsylvania's implied consent statute, 75 Pa.C.S. §1547, as well as case law in which both the United States Supreme Court and the Superior Court stated motorists suspected of drunk driving have no constitutional right to refuse chemical testing. *Bell*, 167 A.3d at 748-49, *discussing South Dakota v. Neville*, 459 U.S. 553 (1983) and *Commonwealth v. Graham*, 703 A.2d 510 (Pa. Super. 1997). Based on this precedent, the panel held appellant had no constitutional right to refuse a blood test and it was constitutionally permissible for the Commonwealth to introduce evidence of such refusal at his trial. *Id.* at 749.

The panel further held the trial court's reliance on *Birchfield* for the opposite conclusion was misplaced, finding the decision did not support the assertion appellant had a constitutional right to refuse chemical testing and thus did not change the analysis applied by the courts in *Neville* and *Graham*. Instead, the panel agreed with the Commonwealth, concluding although the *Birchfield* Court ultimately held it was unreasonable for implied consent laws to impose criminal penalties for refusals, the Court "express[ed] approval of the imposition of civil penalties and evidentiary consequences on motorists who refuse to comply with chemical testing upon their arrest[.]" *Id.* at 750, *citing Birchfield*, 136 S.Ct. at 2185. Based on the Supreme Court's approval of evidentiary consequences set forth in implied consent laws such as Pennsylvania's statute, the

Superior Court held appellant's refusal was properly admitted into evidence and thus he was not entitled to a new trial. *Id.*

We accepted review to consider the following question raised by appellant: "Whether §1547(e) of the Vehicle Code, 75 Pa.C.S. §1547(e), is violative of Article 1 Section 8 of the Pennsylvania Constitution and the Fourth Amendment to the United States Constitution to the extent that it permits evidence of an arrestee's refusal to submit a sample of blood for testing without a search warrant as proof of consciousness of guilt at the arrestee's trial on a charge of DUI?" *Commonwealth v. Bell*, 183 A.3d 978 (Pa. 2018) (*per curiam*). As we are presented with a question of law, our scope of review is plenary and non-deferential. *Commonwealth v. Ali*, 149 A.3d 29, 34 (Pa. 2016).

Appellant contends *Missouri v. McNealy*, 569 U.S. 141 (2013), which rejected a *per se* exigent circumstances exception to the warrant requirement for blood testing based on dissipation of blood alcohol content (BAC), and *Birchfield*, which rejected a search incident to arrest exception to the warrant requirement for blood testing, make clear that DUI suspects have a Fourth Amendment right to refuse warrantless blood testing. Appellant's Brief at 7-8. Appellant submits the cases relied on by the Superior Court, *Neville* and *Graham*, are inapposite as those decisions were based on a Fifth Amendment[5] analysis and were decided when it was still viewed as constitutionally permissible to conduct blood testing without first securing a warrant. *Id.* at 8-9. According to appellant, since *Birchfield* declared a Fourth Amendment right to be free from warrantless blood testing, we must follow the law as stated in *Commonwealth v. Welch*, 585 A.2d 517 (Pa. Super. 1991), which held a defendant's refusal of a warrantless search of her bedroom could not be used as evidence of consciousness of guilt. Appellant's Brief

---

[5] The Fifth Amendment to the United States Constitution states, in relevant part, as follows: "No person shall . . . be compelled in any criminal case to be a witness against himself[.]" U.S. CONST. amend. V.

at 9, *citing Welch*, 585 A.2d at 520. In further support of this proposition, appellant cites *Commonwealth v. Chapman*, 136 A.3d 126 (Pa. 2016), in which this Court held a defendant's refusal to submit to a warrantless blood test for DNA purposes was inadmissible to demonstrate consciousness of guilt. Appellant's Brief at 15, *citing Chapman*, 136 A.3d at 131.

Appellant further argues the language in *Birchfield* pertaining to evidentiary consequences was dicta and does not require a different result here. *Id.* at 10, *citing* Trial Court Op., 8/19/16 at 4. Appellant contends the issue in *Birchfield* was whether DUI defendants may be "'convicted of a crime or otherwise penalized'" for their refusal and it is clear that allowing the Commonwealth to introduce his refusal into evidence penalized him by providing a basis for his conviction. *Id.* (emphasis omitted), *quoting Birchfield*, 136 S.Ct. at 2172. Additionally, appellant argues our decision in *Commonwealth v. Myers*, 164 A.3d 1162 (Pa. 2017) (plurality) held the Pennsylvania implied consent statute does not establish an exception to the warrant requirement and the Commonwealth is required to prove there was voluntary consent given prior to the extraction of blood. *Id.* at 11. Appellant requests we expand the holding in *Myers* — which involved an unconscious DUI suspect — to conscious individuals and hold there is a Fourth Amendment right to refuse warrantless blood testing. *Id.*

Appellant alternatively requests we hold there is an independent right to refuse a warrantless blood test under Article I, Section 8 of the Pennsylvania Constitution, and that Section 1547(e) violates it. *Id.* at 12-14, *citing Commonwealth v. Edmunds*, 586 A.2d 887 (Pa. 1991). Appellant contends although the text of Article I, Section 8 is very similar to that of the Fourth Amendment, this Court has held Article I, Section 8 to be more protective. *Id.* at 12, *citing, e.g., Commonwealth v. Brion*, 652 A.2d 287 (Pa. 1994). Relative to his claim herein, appellant maintains this Court has continuously held the

search of a person involves greater intrusion upon privacy interests than the search of a thing. *Id.* at 13, *citing Theodore v. Delaware Valley Sch. Dist.*, 836 A.2d 76, 89 (Pa. 2003). Appellant observes no other jurisdiction has addressed the admissibility of refusal evidence utilizing a state constitutional analysis. *Id.* Appellant argues this Court should hold, as a matter of public policy, the severity of the drunk driving problem does not outweigh individual privacy rights, and police may use breath tests or their own observations to prove DUI cases without violating those rights. *Id.* at 13-14.[6]

In response, the Commonwealth asserts the United States Supreme Court has consistently approved of implied consent laws like Pennsylvania's statute. Commonwealth's Brief at 6-8, *citing Schmerber v. California*, 384 U.S. 757 (1966) (holding admission of blood test evidence does not violate Fifth Amendment) and *Neville*, *supra* (holding admission of refusal evidence does not violate Fifth Amendment). The Commonwealth further asserts Pennsylvania courts have consistently upheld Section 1547. *Id.* at 8-9, *citing Commonwealth v. Stair*, 699 A.2d 1250 (Pa. 1997) (Opinion in Support of Affirmance) (holding no constitutional right to refuse chemical testing) and *Graham*, *supra* (holding admission of refusal evidence does not violate United States Constitution). Based on this precedent, the Commonwealth argues there is no constitutional right to refuse blood testing in the DUI context and the general rule proffered in *Welch* regarding a completely separate situation — *i.e.*, evidence of a refusal to consent to a warrantless search of a bedroom is inadmissible for purposes of demonstrating consciousness of guilt — does not apply here. *Id.* at 9. To bolster this argument, the Commonwealth points to *Chapman*, where this Court specifically stated "'the admission of evidence of a refusal to consent to a warrantless search to demonstrate consciousness

---

[6] The Defender Association of Philadelphia and the Pennsylvania Association of Criminal Defense Lawyers filed an *amicus curiae* brief in which they present arguments similar to those presented by appellant.

of guilt is problematic, as most jurisdictions hold **(outside the context of implied-consent scenarios)** that such admission unacceptably burdens an accused's right to refuse consent.'" *Id.* at 9-10 (emphasis in original), *quoting Chapman*, 136 A.3d at 131.

The Commonwealth contends the implied consent law is the distinguishing factor between *Welch* and the case at hand, observing "Welch had not agreed (by undertaking to engage in a civil privilege such as operating a motor vehicle) to accept an ultimatum pursuant to which she would either consent to a search or accept non-criminal consequences of a refusal to so consent." *Id.* at 10. The Commonwealth explains "[a] motorist asked to consent to a blood test is **not** in the same position as Welch, and is **not** being penalized for exercising a constitutional right. Rather . . . the motorist is subjected to evidentiary consequences for exercising his **statutory** choice to refuse a chemical test, the non-criminal consequences of which he has already agreed to[.]" *Id.* (emphasis in original). The Commonwealth further asserts our recent decision in *Myers* supports this distinction as the lead opinion stated "Pennsylvania's implied consent statute 'imposes an ultimatum upon the arrestee, who must choose either to submit to a requested chemical test or to face the consequences that follow from the refusal to do so.'" *Id.* at 11, *quoting Myers*, 164 A.3d at 1177 (plurality).

The Commonwealth additionally contends the decisions in *McNeely* and *Birchfield* support the continued validity of Section 1547(e). The Commonwealth observes the *McNeely* Court, in rejecting a *per se* exigency rule, recognized "'[s]tates have a broad range of legal tools to enforce their drunk-driving laws and to secure BAC evidence,' including 'allow[ing] the motorist's refusal to take a BAC test to be used as evidence against him[.]'" *Id.* at 12, *quoting McNeely*, 569 U.S. at 160-61. And, the Commonwealth notes the *Birchfield* Court "confirmed its approval of non-criminal consequences related to implied consent laws" by stating "'[o]ur prior opinions have referred approvingly to the

general concept of implied-consent laws that impose civil penalties and evidentiary consequences on motorists who refuse to comply . . . and nothing we say here should be read to cast doubt on them.'" *Id.* at 13-14 (emphasis omitted), *quoting Birchfield*, 136 S.Ct. at 2185. Accordingly, the Commonwealth asserts the evidentiary consequences for a refusal to submit to blood testing remain permissible under the Fourth Amendment post-*Birchfield*. *Id.* at 14.

With regard to appellant's alternative Article I, Section 8 argument, the Commonwealth contends it is waived because appellant never raised it in the lower courts. *Id.* at 15-19. The Commonwealth also argues appellant's Article I, Section 8 claim should be deemed waived because he failed to adequately develop the issue in his brief to this Court. *Id.* at 19-21.

The Commonwealth nevertheless presents an *Edmunds* analysis and asks this Court to conclude Article I, Section 8 provides no greater protections than the Fourth Amendment in the context of this case. The Commonwealth agrees the text of Article I, Section 8 is similar to that of the Fourth Amendment and that this Court has found independent rights guaranteed by Article I, Section 8 on privacy grounds. *Id.* at 22-24, *citing Theodore*, 836 A.2d at 88. However, the Commonwealth maintains Pennsylvania courts have had numerous opportunities to consider implied consent in the search and seizure context and have consistently aligned with the High Court's decisions. *Id.* at 24-25. In fact, the Commonwealth contends, in no case has a Pennsylvania court suggested Article I, Section 8 provides greater protections in the implied consent context, and our courts have instead referred to "'the Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution' together[,]" which suggests they are coterminous in this context. *Id.* at 25, *quoting Myers*, 164 A.3d at 1167.

The Commonwealth recognizes that no state court has ruled upon the admissibility of refusal evidence in the implied consent context using a state constitutional analysis, but points to several state court decisions that have applied a post-*Birchfield* Fourth Amendment analysis to hold "a defendant's refusal to submit to a chemical test of blood in the implied consent context may be constitutionally admitted into evidence at trial." *Id.* at 26. Specifically, the Commonwealth cites to an *en banc* Colorado Supreme Court decision concluding *Birchfield* was distinguishable from cases involving the admissibility of refusal evidence, *id.* at 26-27, *citing Fitzgerald v. People*, 394 P.3d 671, 675-76 (Colo. 2017), and a Vermont Supreme Court decision holding "'criminalizing the revocation of implied consent crosses the line in terms of impermissibly burdening the Fourth Amendment . . . [b]ut allowing evidence of a refusal to submit to a blood test in the context of a DUI prosecution does not warrant the same constitutional protection.'" *Id.* at 28, *quoting State v. Rajda*, 196 A.3d 1108, 1121 (Vt. 2018).

Regarding public policy, the Commonwealth argues Section 1547(e) does not infringe upon privacy rights as the subsection applies only when a motorist invokes his statutory right to refuse a blood test. *Id.* at 30. Where no blood test takes place, the Commonwealth maintains, the motorist's privacy has not been invaded. *Id.* The Commonwealth further argues the inability to present refusal evidence at trial would prejudice DUI prosecutions because the jury will expect evidence of BAC or an explanation for its absence. *Id.* at 31-32. Lastly, the Commonwealth contends it is vital for it to possess non-criminal means, such as the admissibility of refusal evidence, to encourage motorists to comply with requests for chemical testing. *Id.* at 32-34.[7]

---

[7] The Pennsylvania District Attorney's Association filed an *amicus curiae* brief in which it presents arguments similar to those presented by the Commonwealth.

Preliminarily, we agree with the Commonwealth that appellant's current claim Section 1547(e) violates Article I, Section 8 is waived. Although appellant stated in his pre-trial motion to dismiss "Pennsylvania's Implied Consent Law violates Article 1, Section 8 of the Pennsylvania Constitution and the Fourth Amendment to the United States Constitution[,]" Appellant's Motion to Dismiss, 3/8/16 at 2, he failed at that time to develop an argument that the Pennsylvania Constitution provided any independent grounds for relief. Furthermore, in his post-trial motion for reconsideration, appellant did not reference Article I, Section 8 at all, but only stated *Birchfield* provided him with a "constitutional right to refuse testing of blood[.]" Appellant's Motion for Reconsideration, 7/1/16 at 2. Although appellant includes a brief and cursory *Edmunds* analysis in his brief to this Court, it is the first time he has suggested that Article I, Section 8 provides an independent basis for relief. *See* Appellant's Brief at 12-14. As appellant failed to preserve his Article I, Section 8 claim we decline to consider it. *See Commonwealth v. Chamberlain*, 30 A.3d 381, 405 (Pa. 2011) (declining to consider whether state constitution departed from federal counterpart where argument was not directly advanced in lower courts); Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal"). We therefore limit our review to appellant's argument Section 1547(e) violates his rights under the Fourth Amendment.[8]

---

[8] Neither appellant's failure to develop an *Edmunds* analysis in the trial court nor his failure to reference Article I, Section 8 in his motion for reconsideration is the basis upon which we find waiver. Instead, we find waiver on the same basis as did the Court in *Chamberlain* — appellant "did not claim before the trial court that the Pennsylvania Constitution provided an independent basis for relief." *Chamberlain*, 30 A.3d at 405; *see also id.* at 406 ("We decline to consider whether state due process should depart from federal due process with regard to missing evidence **where this argument was not directly advanced in the court below**.") (emphasis added). Although we recognize appellant stated in his motion to dismiss that "Pennsylvania's Implied Consent Law violates Article 1, Section 8 of the Pennsylvania Constitution and the Fourth Amendment to the United States Constitution[,]" *see* Appellant's Motion to Dismiss, 3/8/16 at 2, appellant failed to directly advance any argument regarding whether the clauses differed. We find the

The Fourth Amendment to the United States Constitution provides, in relevant part, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]" U.S. CONST. amend. IV. It has long been established that a blood draw for purposes of determining BAC constitutes a search under the Fourth Amendment. *Schmerber*, 384 U.S. at 767. As such, the pertinent question under a Fourth Amendment analysis is whether such a search is reasonable. *Birchfield*, 136 S.Ct. at 2173. Generally, in order for a search to be reasonable, the Fourth Amendment requires that police obtain a warrant, supported by probable cause and issued by a neutral magistrate, prior to searching an individual or his property. *Commonwealth v. Arter*, 151 A.3d 149, 153 (Pa. 2016). Although searches conducted without a warrant are presumed to be unreasonable, there are exceptions to this rule, including searches conducted with the consent of the individual whose person or property is being searched. *Commonwealth v. Wilmer*, 194 A.3d 564, 567-68 (Pa. 2018).

In order to combat the dangers of drunk driving, states, including Pennsylvania, have enacted laws which criminalize driving with a BAC that exceeds a certain level. *Birchfield*, 136 S.Ct. at 2166. Blood testing is necessary to determine a motorist's BAC but those suspected of DUI routinely decline to submit to testing when given the option. *Id.* Accordingly, states have also enacted implied consent laws, which impose penalties on motorists who refuse to undergo BAC testing. *Id.* These laws are based on the notion

---

current situation to be akin to cases where this Court has repeatedly stated general claims under the state and federal constitutions do not present independent questions of state constitutional law. *See e.g., Commonwealth v. Lagenella*, 83 A.3d 94, 99 n.3 (Pa. 2013); *Commonwealth v. Galvin*, 985 A.2d 783, 793 n.15 (Pa. 2009); *Commonwealth v. Starr*, 664 A.2d 1326, 1334 n.6 (Pa. 1995). Lastly, the fact that the question granted for review in this case included appellant's claim under Article I, Section 8, *see Commonwealth v. Bell*, 183 A.3d 978 (Pa. 2018) (*per curiam*), does not preclude us from ultimately finding the claim waived. *See Commonwealth v. Metz*, 633 A.2d 125, 126 (Pa. 1993) (declining to address an issue upon which allocatur was granted due to waiver).

that driving is a privilege rather than a fundamental right. *PennDOT v. Scott*, 684 A.2d 539, 544 (Pa. 1996). When partaking in the privilege of driving on Pennsylvania's roads, motorists must comply with Pennsylvania's implied consent statute, 75 Pa.C.S. §1547. The version of the implied consent statute in effect at the time of appellant's arrest provided, in relevant part, as follows:

> Any person who drives, operates or is in actual physical control of the movement of a vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath, blood or urine for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a vehicle:
>
> > (1) in violation of . . . [75 Pa.C.S. §] 3802 (relating to driving under influence of alcohol or controlled substance)[.]

*Former* 75 Pa.C.S. §1547(a)(1).[9]

Section 1547 also sets forth penalties for motorists who were arrested on suspicion of DUI and refused to submit to chemical testing. These penalties include requiring PennDOT to suspend the motorist's license for at least one year, *see* 75 Pa.C.S. §1547(b)(1),[10] and the penalty at issue here: expressly allowing evidence of the motorist's

---

[9] We refer in this opinion to the version of Section 1547(a) in effect at the time of appellant's arrest as *former* 75 Pa.C.S. §1547(a). The full citation for this version is as follows: Act of June 17, 1976, P.L. 162, No. 81, §1, amended December 15, 1982, P.L. 1268, No. 289, §5, amended February 12, 1984, P.L. 53, No. 12, §2, amended May 30, 1990, P.L. 173, No. 42, §5, amended December 18, 1992, P.L. 1411, No. 174, §6, amended July 2, 1996, P.L. 535, No. 93, §1, amended July 11, 1996, P.L. 660, No. 115, §8, amended December 21, 1998, P.L. 1126, No. 151, §18, amended October 4, 2002, P.L. 845, No. 123, §3, amended September 30, 2003, P.L. 120, No. 24, §9.1, 10, amended November 29, 2004, P.L. 1369, No. 177, §2, amended May 11, 2006, P.L. 164, No. 40, §2, *former* 75 Pa.C.S. §1547(a). Subsection (a) was amended in the wake of the *Birchfield* decision. However, subsections (b) and (e) remained unchanged following the amendments.

[10] Section 1547(b) also requires police officers to inform motorists that their refusal would subject them to enhanced criminal penalties if convicted of DUI. *See* 75 Pa.C.S. §1547(b)(2)(ii). Such penalties were held to be unconstitutional in *Birchfield*. In this case, appellant challenges the constitutionality of Section 1547(e) only and, in any event, the

refusal to be admitted at his subsequent criminal trial on DUI charges. *See* 75 Pa.C.S. §1547(e). Section 1547(e) provides as follows:

> In any summary proceeding or criminal proceeding in which the defendant is charged with a violation of [75 Pa.C.S. §]3802 or any other violation of this title arising out of the same action, the fact that the defendant refused to submit to chemical testing as required by subsection (a) may be introduced in evidence along with other testimony concerning the circumstances of the refusal. No presumptions shall arise from this evidence but it may be considered along with other factors concerning the charge.

75 Pa.C.S. §1547(e).

With this statutory framework in mind, we now review the relevant jurisprudence surrounding warrantless blood testing in the context of DUI arrests. In *Schmerber*, the United States Supreme Court considered whether use of the results of a DUI defendant's warrantless blood test as evidence at his trial violated, *inter alia*, the Fourth and Fifth Amendments. 384 U.S. at 759. The High Court reasoned the results of the blood test were not testimonial in nature and thus did not constitute compelled self-incrimination in violation of the Fifth Amendment. *Id.* at 760-65. The Court also denied the defendant's Fourth Amendment claim, concluding it was reasonable for the officer to conduct a warrantless blood test based on exigent circumstances, namely that the defendant was rushed to the hospital, the officer had to investigate the scene of the accident before arriving at the hospital to make the blood draw, and the amount of alcohol in the defendant's blood would have begun to dissipate had the officer first sought a warrant. *Id.* at 766-72.

The Court later decided *Neville*, which presented the question of whether the trial court's admission of a DUI defendant's refusal to submit to a warrantless blood test

Commonwealth has previously conceded that appellant cannot be subject to enhanced criminal penalties based on his refusal when this case proceeds to sentencing. *See* Trial Court Op., 8/19/16 at 2.

violated his rights under the Fifth Amendment. 459 U.S. at 554. The defendant's refusal was admitted into evidence by way of a South Dakota implied consent statute which permitted motorists to refuse the test, but penalized such refusal by revoking their driving licenses for one year and allowing evidence of their refusal to be used against them at trial. *Id.* at 559-60. The *Neville* Court ultimately held the admission of refusal evidence did not violate the Fifth Amendment because the defendant had not been coerced into refusing the test, but instead was given a choice between submitting to the test or accepting the consequences of refusing the test. *Id.* at 562-63. In doing so, the Court recognized the state would prefer the defendant choose to submit to the test as actual BAC evidence which exceeds lawful limits is far stronger evidence of guilt than refusal evidence. *Id.* at 564. As the refusal was not coerced, the Court held its admission into evidence was not barred by the Fifth Amendment right against self-incrimination. *Id.* The Court additionally held the officer's failure to warn the defendant that his refusal could be used against him at trial did not violate his due process rights. *Id.* at 564-66.

The legal landscape regarding warrantless blood tests changed with *McNeely*, in which a DUI defendant challenged the admission of his BAC results where he had refused to submit to a breath test and was then transported to a hospital where a warrantless blood draw was performed without his consent. 569 U.S. at 145-47. The Court held suppression of the blood test results was proper because the warrantless blood test violated the defendant's Fourth Amendment rights. *Id.* at 164-65. The Court rejected Missouri's argument there should be a *per se* rule allowing warrantless blood tests in all DUI cases, based on the alleged automatic exigency arising from the natural dissipation of alcohol in the bloodstream. *Id.* at 151-56. Instead, the Court continued to follow *Schmerber* and held whether a warrantless blood test is reasonable based on exigent circumstances must be determined by viewing the totality of the circumstances of each

particular case. *Id*. at 156. In support of this conclusion, a plurality of the Court noted states have other tools to enforce drunk driving laws and to secure BAC evidence, that presumably do not implicate Fourth Amendment concerns. *Id*. at 160-61 (plurality). Included in these tools, the plurality expressly recognized, are "implied consent laws that require motorists, as a condition of operating a motor vehicle within the State, to consent to BAC testing if they are arrested . . . on suspicion of a drunk-driving offense" and "[s]uch laws impose significant consequences when a motorist withdraws consent[,]" including "allow[ing] the motorist's refusal to take a BAC test to be used as evidence against him in a subsequent criminal prosecution." *Id*. at 161 (plurality).

The Court then decided *Birchfield*. In the introduction to its opinion, the Court noted the penalties for refusing chemical testing in early implied consent laws were suspension or revocation of a motorist's license and allowing evidence of a motorist's refusal to be admitted in a subsequent trial. 136 S.Ct. at 2169. The Court also observed that, more recently, in an effort to further strengthen drunk driving laws, states began imposing criminal penalties on motorists who refuse to submit to chemical testing. *Id*. *Birchfield* squarely presented the question of whether compelling motorists to submit to warrantless breath or blood tests on pain of criminal consequences violates the Fourth Amendment. *Id*. at 2172.

In deciding this question, the High Court first considered whether the search of a DUI suspect's blood or breath was exempted from the warrant requirement as a search incident to arrest. *Id*. at 2174-84. After an assessment of "the effect of BAC tests on privacy interests and the need for such tests," the Court concluded "the Fourth Amendment permits warrantless breath tests incident to arrests for drunk driving" because "[t]he impact of breath tests on privacy is slight, and the need for BAC testing is great." *Id*. at 2184. However, the Court reached "a different conclusion with respect to

blood tests[,]" concluding "[b]lood tests are significantly more intrusive," "their reasonableness must be judged in light of the availability of the less invasive alternative of a breath test[,]" and there is no "justification for demanding the more intrusive alternative without a warrant." *Id.*

The Court next considered whether the implied consent statute at issue satisfied the consent exception to the warrant requirement. *Id.* at 2185-87. The Court recognized its "prior opinions have referred approvingly to the general concept of implied-consent laws that impose civil penalties and evidentiary consequences on motorists who refuse to comply . . . and nothing we say here should be read to cast doubt on them." *Id.* at 2185, *citing McNeely*, 569 U.S. at 160-62; *Neville*, 459 U.S. at 560. However, the High Court held "[t]here must be a limit to the consequences to which motorists may be deemed to have consented by virtue of a decision to drive on public roads" and "motorists cannot be deemed to have consented to submit to a blood test on pain of committing a criminal offense." *Id.* at 2185-86.

Following *Birchfield*, this Court decided *Myers*. In *Myers*, police officers arrested a motorist for DUI and transported him to the hospital as they believed he was so severely intoxicated he required medical attention. 164 A.3d at 1165. Notwithstanding the fact that medical treatment at the hospital rendered the DUI suspect unconscious, a police officer read out the PennDOT DL-26 form in his presence and instructed hospital personnel to draw blood from him for purposes of securing BAC evidence. *Id.* This Court affirmed suppression of the blood test results, holding a blood draw from an unconscious DUI suspect violates the dictates of Pennsylvania's implied consent law as Section 1547(b)(1) provides an absolute right to refuse chemical testing, and an unconscious individual is unable to exercise that right. *Id.* at 1172. A majority of the Court also held, albeit without complete agreement as to reasoning, that a warrantless blood draw from

an unconscious DUI suspect violates the Fourth Amendment. *Id.* at 1173-82 (plurality); 1183-84 (Saylor, C.J., concurring).

The United States Supreme Court's decisions in *McNeely* and *Birchfield* and this Court's decision in *Myers* indicate a warrantless blood test, which is conducted when no exceptions to the warrant requirement apply, violates the Fourth Amendment rights of a motorist suspected of DUI. Outside the implied consent context, such a violation would trigger the application of *Welch* and a refusal to submit to the warrantless blood test would be inadmissible at any subsequent trial on the DUI charges. *See Welch*, 585 A.2d at 520 (defendant's refusal of a warrantless search of her bedroom could not be used as evidence of consciousness of guilt). However, we agree with the Commonwealth that the Pennsylvania implied consent statute is the distinguishing factor between *Welch* and the case at hand. *See Chapman*, 136 A.3d at 131 ("the admission of evidence of a refusal to consent to a warrantless search to demonstrate consciousness of guilt is problematic, as most jurisdictions hold **(outside the context of implied-consent scenarios)** that such admission unacceptably burdens an accused's right to refuse consent") (emphasis added). As the Commonwealth aptly states, unlike the defendant in *Welch,* appellant "agreed (by undertaking to engage in a civil privilege such as operating a motor vehicle) to accept an ultimatum pursuant to which [he] would either consent to a search or accept non-criminal consequences of a refusal to so consent." Commonwealth's Brief at 10.

Indeed, as the *Myers* plurality recognized, implied consent laws "authorize a police officer to request a motorist's submission to a chemical test, at which point the motorist must choose either (a) to comply with the test or (b) to refuse and accept the consequences that accompany refusal." 164 A.3d at 1174 (plurality). The choice may well be a difficult one, but this alone does not invalidate the "implied consent" created by the statute. *See Jenkins v. Anderson*, 447 U.S. 231, 236 (1980) ("the Constitution does

not forbid 'every government-imposed choice in the criminal process that has the effect of discouraging the exercise of constitutional rights'"), *quoting Chaffin v. Stynchcombe*, 412 U.S. 17, 30 (1973). As implied by *Birchfield*, the pertinent question in determining the constitutionality of a statute demanding this particular choice is whether the consequence for refusing a warrantless blood test undermines the inference that the motorist implicitly consented to it, and suggests instead that the "search" was coerced.[11,12]

---

[11] This question fully encompasses the threshold issue in *Jenkins* and *Chaffin* and our analysis below answers it. *Jenkins*, 447 U.S. at 236 ("The 'threshold question is whether compelling the election impairs to an appreciable extent any of the policies behind the rights involved.'"), *quoting Chaffin*, 412 U.S. at 32. As seen *infra*, we disagree with the dissent's assertion that "[t]he sole purpose of the implied consent law's consequences of refusal is to induce a motorist's compliance with chemical testing." Dissenting Opinion, slip op. at 21 n.6. *See also id.* at 29 ("the 'only objective' of this practice is to 'discourage the assertion' of that constitutional right"), *quoting Chaffin*, 412 U.S. at 32 n.20. Indeed, the consequence at issue here — allowing evidence of a motorist's refusal at his subsequent trial for DUI — does not solely punish a defendant but also has a legitimate purpose, just as the consequence at issue in *Jenkins*. *See Jenkins*, 447 U.S. at 238 (impeachment evidence has the legitimate purpose of "advanc[ing] the truth-finding function of the criminal trial"). As stated below, the admission of refusal evidence "furthers the reliability of the criminal process and its truth-seeking function by allowing the jurors to understand why the State is not submitting an evidentiary test in a DUI prosecution." *Rajda*, 196 A.3d at 1120. Surely, it cannot be said that the sole purpose of the admission of refusal evidence "is to induce a motorist's compliance with chemical testing." Dissenting Opinion, slip op. at 21 n.6.

[12] The dissent criticizes our decision not to address the High Court's jurisprudence regarding the unconstitutional conditions doctrine and the penalization of the exercise of constitutional rights. *See* Dissenting Opinion, slip op. at 14-15 n.4, 19 & n.5, 20. Although appellant may have raised the unconstitutional conditions doctrine in his motion to dismiss before the trial court, *see* Appellant's Motion to Dismiss, 3/8/16 at 2 ("Pennsylvania's Implied Consent Law violates Article 1, Section 8 of the Pennsylvania Constitution and the Fourth Amendment to the United States Constitution under the Unconstitutional Conditions Doctrine"), we decline to address the doctrine here because appellant himself, in his brief to this Court, does not discuss the doctrine or its potential application to his case, nor does he cite to any of the High Court's cases discussing the penalization of constitutional rights, but instead cites solely to the distinguishable cases of *Chapman* and *Welch*. Furthermore, we take considerable issue with Justice Wecht's spurious assertion that we prefer "to set a dangerous and unfounded precedent suggesting that the universe

Our view on this point is substantially aligned with that of the Supreme Court of Vermont. When deciding an issue identical to the one at hand, the court opined:

> As the [*Birchfield*] Court suggested . . . the admission of evidence of a refusal to submit to a blood draw is a qualitatively different consequence with respect to its burden on the Fourth Amendment. Criminalizing refusal places far more pressure on defendants to submit to the blood test — thereby impermissibly burdening the constitutionally protected right not to submit to the test — than merely allowing evidence of the refusal at a criminal DUI trial, where a defendant can explain the basis for the refusal and the jury can consider the defendant's explanation for doing so. Moreover, the admission of refusal evidence in the context of a DUI proceeding, without directly burdening the privacy interest protected by the Fourth Amendment, furthers the reliability of the criminal process and its truth-seeking function by allowing the jurors to understand why the State is not submitting an evidentiary test in a DUI prosecution.

---

of applicable law is limited to the Table of Citations section of an appellant's brief." *See* Dissenting Opinion, slip op. at 20. Of course we are not limiting our review. Instead, we apply the longstanding principle that courts should not act as advocates at the risk of depriving the parties the opportunity to be heard. *Yount v. DOC*, 966 A.2d 1115, 1119 (Pa. 2009), *citing Luitweiler v. Northchester Corp.*, 319 A.2d 899, 901 n.5 (Pa. 1974). Indeed, the Commonwealth here had no opportunity to present advocacy to this Court as to whether the unconstitutional conditions doctrine is implicated because the words "unconstitutional conditions doctrine" do not even appear in appellant's brief.

In any event, we find the unconstitutional conditions doctrine is inapplicable here as the implied consent law does not condition the privilege of driving upon a motorist's submission to future warrantless blood testing. Indeed, as stated previously, Section 1547(b)(2) provides an absolute right to refuse all chemical testing. *See Myers*, 164 A.3d at 1172. The fact that certain consequences arise from a motorist's refusal to submit to chemical testing, including the evidentiary consequence presently at issue, does not render the implied consent statute unconstitutional. The lead opinion in *Myers*, authored by Justice Wecht, who takes a dissenting position here, recognized as much by stating: "[t]he statute does not authorize police officers to seize bodily fluids without an arrestee's permission. Instead, it imposes an ultimatum upon the arrestee, who must choose either to submit to a requested chemical test or to face the consequences that follow from the refusal to do so." *Id.* at 1177; *see also Jenkins*, 447 U.S. at 236 ("the Constitution does not forbid 'every government-imposed choice in the criminal process that has the effect of discouraging the exercise of constitutional rights'"), *quoting Chaffin*, 412 U.S. at 30.

The implied consent statute establishes a bargain in which, in exchange for the privilege of engaging in the potentially dangerous activity of operating a motor vehicle on the highway, motorists impliedly consent to testing for impaired driving to protect the public. The critical question is whether civil or criminal sanctions resulting from motorists' revocation of their implied consent unconstitutionally coerce them to submit to testing. In *Birchfield*, the U.S. Supreme Court has ruled, with respect to the more invasive blood test, that only criminalizing the revocation of implied consent crosses the line in terms of impermissibly burdening the Fourth Amendment.

But allowing evidence of a refusal to submit to a blood test in the context of a DUI prosecution does not warrant the same constitutional protection. The speculative conclusion that a citizen will consent to a search that he or she would otherwise resist solely to avoid evidentiary implications at a possible future trial seems too attenuated to meet the U.S. Supreme Court's test in practice. Indeed, as the Court in *Birchfield* pointed out, states began criminalizing refusals because the other civil and evidentiary consequences provided an insufficient incentive for motorists — most particularly repeat DUI offenders — to submit to testing.

*Rajda*, 196 A.3d at 1120-21 (internal footnotes, quotations, brackets, and citations omitted). Like the Vermont Supreme Court, and following *Birchfield*, we focus our analysis on the nature of the consequences permitted by Pennsylvania's implied consent statute.

Undeniably, the *Birchfield* Court rejected criminal prosecution as a valid consequence for refusing a warrantless blood test by stating "motorists cannot be deemed to have consented to submit to a blood test on pain of committing a criminal offense." 136 S.Ct. at 2186. At the same time, the Court did not back away from its prior approval of other kinds of consequences for refusal, such as "evidentiary consequences." *Id.* at 2185 ("Our prior opinions have referred approvingly to the general concept of implied-consent laws that impose civil penalties and evidentiary consequences on motorists who refuse to comply. Petitioners do not question the constitutionality of those laws, and nothing we say here should be read to cast doubt on them.") (internal citations omitted).[13] Moreover, the *Birchfield* Court cited to the *McNeely* plurality which provided

---

[13] The Supreme Court of the United States recently decided the *Birchfield*-related case of *Mitchell v. Wisconsin*, ___ U.S. ___, 139 S.Ct. 2525 (2019) (plurality), in which the

a general endorsement of the evidentiary consequence at issue in this case — evidence of a refusal being admitted at a DUI suspect's trial. *Id.* at 2185, *citing McNeely*, 569 U.S. at 161 (implied consent laws "impose significant consequences when a motorist withdraws consent; typically the motorist's driver's license is immediately suspended or revoked, and most [s]tates allow the motorist's refusal to take a BAC test to be used as evidence against him in a subsequent criminal prosecution"). Finally, the *Birchfield* Court also cited *Neville*, which approved of admitting refusal evidence in a DUI trial, albeit in the context of a Fifth Amendment challenge. *Id.*, *citing Neville*, 459 U.S. at 560. Based on the above, we find ample support to conclude the High Court would approve this particular evidentiary consequence in the context of a Fourth Amendment challenge.[14]

_____

plurality determined a warrantless blood test is generally valid under the 4th Amendment based on exigent circumstances where a motorist suspected of DUI is unconscious. Although *Mitchell* is not directly relevant here, the opinion signals general approval of implied consent laws and evidentiary consequences for failing to comply with such laws. *See Mitchell*, 139 S.Ct. at 2532 ("'Our prior opinions referred approvingly to the general concept of implied-consent laws that impose civil penalties and evidentiary consequences on motorists who refuse to comply.'"), *quoting Birchfield*, 136 S.Ct. at 2185.

[14] Our learned colleague in dissent is deliberate in his attempt to dispute this conclusion. In doing so, Justice Wecht relies on dicta from *Birchfield* which he finds useful, *see* Dissenting Opinion, slip op. at 10-11 (quoting dicta from *Birchfield* regarding the seeking of warrants), while simultaneously criticizing our reliance on the High Court's expressed intention not to cast doubt on implied consent laws that impose civil penalties and evidentiary consequences. *Compare id.* at 23 ("As I read *Birchfield*'s caveat, the Court merely declined to opine concerning matters outside the scope of the issue upon which *certiorari* was granted") *with Birchfield*, 136 S.Ct. at 2185 ("Our prior opinions have referred approvingly to the general concept of implied-consent laws that impose civil penalties and evidentiary consequences on motorists who refuse to comply . . . and nothing we say here should be read to cast doubt on them."). The dissent also manufactures an illusory circularity problem where one does not exist in order to reach a conclusion — invalidating all implied consent laws with respect to blood testing — that no other court has reached. *Cf. Rajda*, 196 A.3d at 1121 ("[t]he case law interpreting implied consent laws demonstrates that the judiciary overwhelmingly sanctions the use of civil penalties and evidentiary consequences against DUI suspects who refuse to comply")

Accordingly, we conclude the "evidentiary consequence" provided by Section 1547(e) for refusing to submit to a warrantless blood test — the admission of that refusal at a subsequent trial for DUI — remains constitutionally permissible post-*Birchfield*. We therefore affirm the order of the Superior Court.

Jurisdiction relinquished.

Chief Justice Saylor and Justices Baer, Todd and Mundy join the opinion.

Justice Mundy files a concurring opinion in which Justice Todd joins.

Justice Wecht files a dissenting opinion in which Justice Donohue joins.

---

(citation omitted); *Fitzgerald*, 394 P.3d at 676 ("the Supreme Court has all but said that anything short of criminalizing refusal does not impermissibly burden or penalize a defendant's Fourth Amendment right to be free from an unreasonable warrantless search"). Rather than engaging in a discussion of the dissent's perceived "paradox," we need only answer one question: is the evidentiary consequence at issue so coercive that it renders a motorist's prospective consent to blood testing involuntary? As detailed above, the answer to that question is no.