J-S47036-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMES EDWARD HALL | : | |
| | : | |
| Appellant | : | No. 1309 EDA 2025 |

Appeal from the Judgment of Sentence Entered March 17, 2025
In the Court of Common Pleas of Bucks County Criminal Division at
No(s): CP-09-CR-0001267-2021

BEFORE: PANELLA, P.J.E., OLSON, J., and BECK, J.

MEMORANDUM BY BECK, J.:                           **FILED APRIL 10, 2026**

James Edward Hall ("Hall") appeals from the judgment of sentence entered by the Bucks County Court of Common Pleas ("trial court") following his convictions of driving under the influence of alcohol ("DUI") – general impairment, DUI – highest rate of alcohol, driving while operating privilege is suspended or revoked, driving without a license, careless driving, and failure to drive within a traffic lane.[1] On appeal, Hall challenges the trial court's denial of his motion to suppress the results of his blood draw and the legality of his sentence. Because we find no merit to either claim, we affirm.

The trial court summarized the facts and procedural history of this case as follows:

---

[1] 75 Pa.C.S. §§ 3802(a)(1), (c), 1543(b)(1.1)(iii), 1501(a), 3714(a), 3309(1).

[O]n December 11, 2020[,] around 10:59 p.m. at 191 Lenape Drive, New Britain, Bucks County, Pennsylvania[,] Officer Brian Jones of the New Britian Township Police Department responded to the scene after receiving a call that [Hall] crashed his vehicle onto the lawn of the residence located at that address. After arriving on scene, Officer Jones noticed [Hall]'s Ford F-250 truck was about 15 to 20 feet off [] the roadway and had also struck a [utility] pole. Officer Jones found [Hall] seated on the curb of 191 Lenape Drive and immediately noticed that his speech was slow and slurred, his eyes were red and glassy, and his breath smelled like alcohol. [Hall] immediately told Officer Jones that he was the driver of the vehicle and that he "fucked up" and drank "a lot." Officer Jones asked [Hall] to relocate to an area under a streetlight in front of the residence and noticed that, as [Hall] complied, he stumbled and seemed very uneasy on his feet.

Officer Jones then asked [Hall] to complete field sobriety tests, more specifically, the horizontal gaze nystagmus test, the walk-and-turn test, and the one-leg stand test. [Hall] failed to satisfactorily complete all three tests, so Officer Jones formed the opinion that he was too impaired to safely operate a motor vehicle. [Hall] was handcuffed and placed into Officer Jones' patrol car. At the police station, Officer Jones asked [Hall] to submit to a blood test and reviewed the DL-26 form with him. [Hall] signed the form acknowledging that he understood its contents and agreed to submit to the blood test. He did not ask questions nor indicate that he wished to refuse the blood test at any time. The results of the blood test revealed that [Hall]'s blood alcohol content level ["BAC"] was 0.224. Officer Jones also determined that [Hall]'s license was suspended for DUI-related offenses at the time of the incident.

On December 6, 2024, [Hall] filed a motion to suppress challenging the legality of the blood draw … as Officer Jones had not informed [Hall] of his rights pursuant to *Miranda v. Arizona*[2] before asking for consent to draw blood. On December 9, 2024, [the trial court] held a hearing on [Hall]'s motion[.]

\* \* \*

_____

[2] *Miranda v. Arizona*, 384 U.S. 436, 496 (U.S. 1966).

That same day, December 9, 2024, after a stipulated waiver trial, [the trial court] found [Hall] guilty of [the above-referenced crimes].

Trial Court Opinion, 7/16/2025, at 1-4 (unnecessary capitalization and record citations omitted).

On March 17, 2025, the trial court found that Hall had two prior convictions of driving while operating privilege is suspended or revoked in November 2013 and October 2015. His conviction of that offense in this case being his third, the trial court sentenced him to the mandatory minimum sentence of two to four years in prison pursuant to 75 Pa.C.S. § 1543(b)(1.1)(iii). The court ordered the sentences for his other convictions to run concurrently with his sentence for driving while operating privilege is suspended or revoked.

On March 24, 2025, Hall filed timely post-sentence motions. The trial court held a hearing on the post-sentence motions on April 28, 2025, and subsequently denied them on April 29, 2025. On May 23, 2025, Hall timely appealed to this Court. He presents the following issues for review:

1. [Hall]'s warrantless blood draw was the product of coercive techniques by police which removed the opportunity to make a knowing and conscious decision to submit to chemical testing.

2. The [trial court] erred by issuing an illegal sentence to [Hall] for 75 Pa.C.S. § 1543(b)(1.1)(iii) in the absence of sufficient evidence.

Hall's Brief at 5 (issues reordered for ease of review).

In his first issue, Hall argues that the trial court erred by denying his suppression motion. *See id.* at 37-40. He asserts that Officer Jones deprived him of the opportunity to make a knowing and voluntary decision to consent to a blood draw because he was under arrest and at the police station and the record is silent as to whether he knew he had the right to refuse consent to a blood draw. *Id.* at 39-40. Hall contends that the only evidence that he made a knowing and voluntary decision to submit to a blood draw is the fact that he was compliant with Officer Jones throughout their interaction. *Id.* at 40.[3]

Our review of a challenge to a trial court's denial of a suppression motion "is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." *Commonwealth v. Carey*, 249 A.3d 1217, 1223 (Pa. Super. 2021).

> Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as

---

[3] The hearing on Hall's suppression motion focused on his argument that his consent to the blood draw was invalid because Officer Jones failed to read him his *Miranda* rights before he signed the DL-26 form. *See* Trial Court Opinion, 7/16/2025, at 7. Hall, however, has not pursued this argument on appeal and it is therefore waived. *See Commonwealth v. Johnson*, 985 A.2d 915, 924 (Pa. 2009) ("where an appellate brief fails to ... develop the issue in any [ ] meaningful fashion capable of review, that claim is waived"). The Commonwealth asserts that Hall waived the argument before this Court, set forth above, by failing to raise it before the trial court. *See* Commonwealth's Brief at 16-17. Based on our review of the record, however, we conclude that Hall raised this argument set forth above in his suppression motion therefore preserved it for our review. *See* Suppression Motion, 7/13/2021, ¶¶ 8-14.

a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. The suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

      Moreover, appellate courts are limited to reviewing only the evidence presented at the suppression hearing when examining a ruling on a pre[]trial motion to suppress.

***Id.*** (citation omitted).

The Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protect individuals from unreasonable searches and seizures.[4] ***Int. of T.W.***, 261 A.3d 409, 416 (Pa. 2021). "It has long been established that a blood draw for purposes of

_____

[4] The Fourth Amendment provides:

The right of the people to be secure in their persons, houses, paper, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularity describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV. Article I, Section 8 of the Pennsylvania Constitution states:

The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizure, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.

Pa. CONST. art. I, § 8.

determining BAC constitutes a search under the Fourth Amendment." *Commonwealth v. Bell*, 211 A.3d 761, 769 (Pa. 2019). It is also well settled that "[a] search or seizure conducted without a warrant is presumptively unreasonable … subject to a few specifically established, well-delineated exceptions." *Commonwealth v. Jones-Williams*, 279 A.3d 508, 515 (Pa. 2022) (quotation marks and citation omitted). One such exception is voluntary consent to a search. *Commonwealth v. Evans*, 153 A.3d 323, 327-28 (Pa. Super. 2016).

"In determining the validity of a given consent, the Commonwealth bears the burden of establishing that a consent is the product of an essentially free and unconstrained choice—not the result of duress of coercion, express or implied, or a will overborne—under the totality of the circumstances." *Commonwealth v. Krenzel*, 209 A.3d 1024, 1028 (Pa. Super. 2019). "[N]o one fact, circumstance, or element of the examination of a person's consent" is significant or controlling. *Commonwealth v. Smith*, 77 A.3d 562, 566 (Pa. 2013) (citation omitted). An evaluation of the circumstances relating to an individual's consent also involves "the maturity, sophistication and mental or emotional state of the [consenting party]." *Id.* at 573 (citation omitted). While there is no hard and fast list of factors evincing voluntariness, relevant considerations include:

> 1) the defendant's custodial status; 2) the use of duress or coercive tactics by law enforcement personnel; 3) the defendant's knowledge of his right to refuse to consent; 4) the defendant's education and intelligence; 5) the defendant's belief that no

incriminating evidence will be found; and 6) the extent and level of the defendant's cooperation with the law enforcement personnel.

***Krenzel***, 209 A.3d at 1028-29. Police may not obtain consent for a search "through stealth, deceit or misrepresentation, and … if such exists, this is tantamount to implied coercion." ***Smith***, 77 A.3d at 569 (citation omitted). Additionally, the lack of a warning that blood draw results may be used in a criminal investigation does not render consent involuntary, as "it would be thoroughly impractical to impose on the normal consent search the detailed requirements of an effective warning," such as that required by ***Miranda***. ***Id.*** at 571-72 (quotation marks and citation omitted); ***see also Commonwealth v. Carmenates***, 266 A.3d 1117, 1124 (Pa. Super. 2021) (en banc) ("Knowledge of the right to refuse to consent to the search is a factor to be taken into account, but the Commonwealth is not required to demonstrate such knowledge as a prerequisite to establishing voluntary consent.").

Officer Jones testified at the suppression hearing that when he arrived at the scene Hall's motor vehicle accident, he observed Hall sitting on the curb showing obvious signs of intoxication. N.T., 12/9/2024, at 7, 9-10. He then subjected Hall to several field sobriety tests, and while Hall understood the officer's instructions on how to perform each test, he was unable to perform them in a satisfactory manner leading Officer Jones to conclude Hall was "incapable of safe driving." ***Id.*** at 11-14.

Officer Jones explained that he then handcuffed Hall, placed him in his patrol vehicle, and transported him to the police station where Officer Jones requested that Hall take a blood test. *Id.* at 14-15. Officer Jones testified that he proceeded to read the DL-26 form to Hall "verbatim," which informed Hall that he was under arrest for DUI, that Officer Jones was requesting that he submit to a blood draw, and that he could refuse the blood test, but that if he did, it would result in the suspension of his driver's license. *Id.* at 15, Ex. C-3. Officer Jones stated that he believed Hall understood everything that he read to him from the DL-26 form and that Hall then signed the form. *Id.* at 15-16. Officer Jones explained that Hall then underwent the blood draw and at no point in the entire process did Hall express that he did not wish to proceed with the blood test. *Id.* at 16-18.

Thus, the record reveals that although Hall was in police custody at the time Officer Jones requested the blood draw, there is no evidence that the officer used coercive tactics to obtain Hall's consent for the blood draw, and that Hall was cooperative with Officer Jones throughout the entire process. *Krenzel*, 209 A.3d at 1028-29. Additionally, contrary to Hall's argument, Officer Jones informed him that he had the right to refuse the blood draw when the officer read this information to him from the DL-26 form. N.T., 12/9/2024, at 15, Ex. C-3. Furthermore, there is also no indication in the record that Hall did not understand the circumstances or his rights relating to the blood draw. *See id.* at 14-18. The record does reflect that Hall was likely

aware that the results of the blood draw would provide incriminating evidence, as Hall told Officer Jones that he had a lot to drink. N.T., 12/9/2024, at 10.

Based on the foregoing, including our review of the factors relating to the voluntariness of Hall's consent and the totality of the circumstances, the trial court's determination that Hall's blood draw was not coercive and that he voluntarily gave his consent was supported by the record. We therefore conclude that the trial court did not err in denying Hall's suppression motion.

In his second issue, Hall argues that the trial court erred in imposing an illegal sentence. **See** Hall's Brief at 18-37. He asserts that the Commonwealth failed to establish that his conviction of driving while operating privilege is suspended or revoked under section 1543(b)(1.1) constituted his third such conviction, and thus resulted in the trial court improperly sentencing him to a mandatory minimum prison term of two years. **See id.** Hall contends that the trial court improperly relied on his October 2015 conviction ("2015 conviction") for which the Bucks County DUI Court Sheet indicated that he had only been convicted under section "1543B." **Id.** at 21-23, 32-37. Hall argues that the plain language of the sentencing order for his 2015 conviction indicates that he was only convicted under section 1543(b) and not section 1543(b)(1.1) and that here therefore only has two convictions under section 1543(b)(1.1). According to Hall, precedent dictates that the language of an unambiguous sentencing order is controlling and a court cannot rely on outside evidence to reinterpret the order. **Id.** at 23-32. Consequently, Hall

argues that in determining that his 2015 conviction was under section 1543(b)(1.1), the trial court in this case improperly amended the 2015 sentencing order. *Id.* at 18-21.

A question as to the applicability of a mandatory minimum sentencing provision constitutes a challenge to the legality of a sentence. *See Commonwealth v. Gilliam*, 249 A.3d 257, 276 (Pa. Super. 2021). "When reviewing the legality of a sentence, our standard of review is de novo and our scope of review is plenary." *Id.* (quotation marks and citation omitted).

Section 1543(b) provides as follows:

**(b) Certain offenses.--**

(1) The following shall apply:

(i) A person who drives a motor vehicle on a highway or trafficway of this Commonwealth at a time when the person's operating privilege is suspended or revoked as a condition of acceptance of Accelerated Rehabilitative Disposition for a violation of section 3802 (relating to driving under influence of alcohol or controlled substance) or the former section 3731, because of a violation of section 1547(b)(1) (relating to suspension for refusal) or 3802 or former section 3731 or is suspended under section 1581 (relating to Driver's License Compact) for an offense substantially similar to a violation of section 3802 or former section 3731 shall, upon a first conviction, be guilty of a summary offense and shall be sentenced to pay a fine of $500 and to undergo imprisonment for a period of 60 days.

(ii) A second violation of this paragraph shall constitute a summary offense and, upon conviction of this paragraph, a person shall be sentenced to pay a fine of $1,000 and to undergo imprisonment for 90 days.

(iii) A third or subsequent violation of this paragraph shall constitute a misdemeanor of the third degree and, upon

conviction of this paragraph, a person shall be sentenced to pay a fine of $2,500 and to undergo imprisonment for not less than six months.

(1.1)(i) A person who has an amount of alcohol by weight in his blood that is equal to or greater than .02% at the time of testing or who at the time of testing has in his blood any amount of a Schedule I or nonprescribed Schedule II or III controlled substance, as defined in the act of April 14, 1972 (P.L. 233, No. 64), known as The Controlled Substance, Drug, Device and Cosmetic Act, or its metabolite or who refuses testing of breath under section 1547 or chemical testing of blood pursuant to a valid search warrant, court order or any other basis permissible by the Constitution of the United States and the Constitution of Pennsylvania, and who drives a motor vehicle on any highway or trafficway of this Commonwealth at a time when the person's operating privilege is suspended or revoked as a condition of acceptance of Accelerated Rehabilitative Disposition for a violation of section 3802 or former section 3731 or because of a violation of section 1547(b)(1) or 3802 or former section 3731 or is suspended under section 1581 for an offense substantially similar to a violation of section 3802 or former section 3731 shall, upon a first conviction, be guilty of a summary offense and shall be sentenced to pay a fine of $1,000 and to undergo imprisonment for a period of 90 days.

(ii) A second violation of this paragraph shall constitute a misdemeanor of the third degree, and upon conviction thereof the person shall be sentenced to pay a fine of $2,500 and to undergo imprisonment for not less than six months.

(iii) A third or subsequent violation of this paragraph shall constitute a misdemeanor of the first degree, and upon conviction thereof the person shall be sentenced to pay a fine of $5,000 and to undergo imprisonment for not less than two years.

75 Pa.C.S. § 1543(b) (footnote omitted).

Hall attempts to make this an issue of the trial court in this case improperly modifying the sentence from his 2015 conviction.  *See* Hall's Brief

at 18-37. He maintains that the trial court improperly interpreted the Bucks County DUI Court Sheet to state that his 2015 conviction was under section 1543(b)(1.1) when the sheet plainly stated that the conviction was under section "1543B." **See id.** Hall cites a substantial amount of authority regarding the interpretation of sentencing orders for purposes of determining a defendant's actual sentence. **See id.** (citing, e.g., **Commonwealth v. Kremer**, 206 A.3d 543, 548 (Pa. Super. 2019) (stating that a "signed sentencing order, if legal, controls over oral statements of the sentencing judge not incorporated into the signed judgment of sentence"). The question at issue, however, is not the sentence he received for his 2015 conviction, but rather, the basis for his conviction in October 2015, as it is the evidence of past convictions, not the sentence imposed, that triggers the mandatory minimum sentencing provision of section 1543(b)(1.1)(iii). **See** 75 Pa.C.S. § 1543(b)(1.1)(iii).

For the mandatory minimum sentence of section 1543(b)(1.1)(iii) to be applicable, the Commonwealth had to prove that Hall had been convicted of violating section 1543(b)(1.1) on two prior occasions. **Id.** Regarding sentences for second and subsequent offenses, the Commonwealth must present proof of the defendant's past convictions by a preponderance of the evidence. **See** 42 Pa.C.S. § 9714(d). "A preponderance of the evidence is only the greater weight of the evidence, i.e., to tip a scale slightly is the criteria or requirement for preponderance of the evidence." **Commonwealth v.**

*Neysmith*, 192 A.3d 184, 189 (Pa. Super. 2018) (quotation marks and citation omitted).

The record reflects that the Commonwealth presented Hall's Pennsylvania Department of Transportation Certified Driver's History, which indicated that he had convictions under section 1543(b)(1.1) in November 2013 and October 2015. N.T., 12/9/2024, Ex. C-5 at 9-10. The Commonwealth also presented the certified records of Hall's November 2013 conviction under section 1543(b)(1.1) from Montgomery County and his October 2015 conviction from Bucks County. *See id.*, Exs. C-6, C-7. The criminal information for Hall's October 2015 conviction plainly, and repeatedly, states he was charged with and pled guilty to violating section 1543(b)(1.1). N.T., 12/9/2024, Ex.C-7. Although the "Bucks County DUI Court Sheet" (which, incidentally, is not identified as a sentencing order) does not specifically state he was convicted of section 1543(b)(1.1), it includes a tiered sentencing structure for violations of section "1543B." *Id.* Importantly, the version of section 1543(b) in effect at the time of Hall's 2015 conviction only contained a tiered sentencing structure for violations of section 1543(b)(1.1). *See* 75 Pa.C.S. § 1543 (effective Sept. 4, 2012 to Oct. 17, 2018). The General Assembly did not enact a tiered sentencing scheme for section 1543(b)(1) until it amended the statute in 2018. *See id.* (2018, Oct. 24, P.L. 925, No. 153, § 1, effective Dec. 24, 2018). Based on the foregoing, we conclude that the Commonwealth established by a preponderance of the evidence that Hall's

November 2013 and October 2015 convictions for driving while operating privilege is suspended or revoked were under section 1543(b)(1.1). ***See id.*** The trial court therefore did not err in determining that Hall's conviction under section 1543(b)(1.1) in this case was his third such conviction, triggering the mandatory minimum prison sentence of section 1543(b)(1.1)(iii). Accordingly, his second issue does not entitle him to relief.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/10/2026