J-S49035-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOSEPH NARDIZZI | : | |
| | : | |
| Appellant | : | No. 565 WDA 2020 |

Appeal from the Judgment of Sentence Entered November 27, 2019
In the Court of Common Pleas of Westmoreland County Criminal Division
at No(s): CP-65-CR-0000526-2018

BEFORE: OLSON, J., DUBOW, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.: FILED DECEMBER 07, 2020

Appellant Joseph Nardizzi appeals the judgment of sentence entered by the Court of Common Pleas of Westmoreland County after the trial court convicted Appellant of Driving Under the Influence of Alcohol (DUI: General Impairment - Incapable of Safe Driving).[1] Appellant claims the trial court erred in denying his motion for acquittal and challenges the sufficiency and weight of the evidence supporting his conviction. We affirm.

The trial court aptly summarized the factual background of this case as follows:

The charges in the case arose out of an investigation following a motor vehicle accident involving [Appellant,] Joseph Nardizzi on December 23, 2017 in Greensburg, Westmoreland County. The evidence presented at the non-jury trial established that on the date of the incident, in the early evening hours,

_____

[*] Former Justice specially assigned to the Superior Court.
[1] 75 Pa.C.S.A. § 3802(a)(1).

[Appellant] rear-ended a vehicle driven by Mark Middleton (hereinafter "Middleton"), causing damage to Middleton's vehicle. Middleton testified that after his vehicle was hit, he exited his vehicle, walked to the rear to assess the damages, and exchanged information with [Appellant]. According to Middleton, [Appellant] informed him that he wanted to leave because there was a State Police presence in the area, and asked if he could provide Middleton with his phone number and call him the following day with his information.

Middleton testified that based on his observations and training and experience, as stated in further detail below, he believed [Appellant] "to be sort of not with it, kind of maybe under the influence maybe." In support of his belief, he stated that [Appellant] was apprehensive in providing his information, he wanted to leave the area, he was very pensive, and he was guttural in his tone. Middleton stated that he has been a volunteer firefighter for 30-some years, he deals with traffic accidents and vehicle collisions, he has his State Police Certification for Accident Reconstruction [], and he currently is state police certified to handle state police equipment.

* * *

After eventually providing some information, Middleton indicated that [Appellant] and him parted ways, and he subsequently noticed that the insurance information that [Appellant] provided to him was expired. As such, Middleton testified that he stopped at the Greensburg Police Station and spoke with Patrolman Justin Scalzo regarding the insurance information. On cross-examination, Middleton confirmed that at the time of the accident, there were no adverse road conditions, and it was just starting to get dark outside. Middleton testified that following the traffic accident, he did not observe [Appellant] having any difficulty pulling into the S & T parking lot, and at no time during the interaction did he observe [Appellant] with a staggered gait, glassy bloodshot eyes, or a smell of the odor of alcohol; however, he indicated that he did not "really look at [Appellant] that well" and [Appellant] never really left the area of his vehicle for Middleton to see him.

Patrolman Justin Scalzo, of the City of Greensburg Police Department, testified that on the date of the incident at 5:55 p.m., he was dispatched to respond to the police station to take a report of a vehicle accident reported by Middleton. Patrolman Scalzo indicated that after speaking to Middleton, he radioed the officers

- 2 -

who he was working with that evening to respond to [Appellant's] residence, which was provided on [Appellant's] vehicle registration, in order to check on [Appellant's] condition and determine if he had a valid insurance card. According to Patrolman Scalzo, Patrolman Elliott Fejes indicated that they made contact with [Appellant] and advised Patrolman Scalzo to report to the scene as Patrolman Fejes believed [Appellant] was under the influence.

Patrolman Chase Mollomo of the City of Greensburg Police Department testified that he was dispatched to [Appellant's] residence on Cherry Street with Patrolman Fejes, where he observed [Appellant's] vehicle with light front-end damage, and [Appellant] admitted to hitting Middleton's vehicle. Additionally, after encountering [Appellant], Patrolman Mollomo indicated that he smelled an alcoholic beverage emanating from [Appellant's] person, and [Appellant] acknowledged he had been drinking. Patrolman Mollomo stated that he remained on the scene with [Appellant] until Patrolman Scalzo arrived on scene.

Patrolman Scalzo indicated that he immediately responded to the area and arrived within a couple of minutes. Patrolman Scalzo testified that upon approaching [Appellant], he observed a strong odor of an alcoholic beverage coming from his person and observed [Appellant] with an unsteady gait, slurred speech, and glassy eyes. At this point, Patrolman Scalzo stated that he determined that in his belief, [Appellant] was driving under the influence of an alcoholic beverage. According to Patrolman Scalzo, [Appellant] admitted to drinking "a little," but he indicated that "I am not DUI." Additionally, it was relayed that [Appellant] refused to perform any Standardized Field Sobriety tests or submit to a breath test.

After the Commonwealth rested, Defense Counsel moved for judgment of acquittal arguing that Patrolman Scalzo's testimony that [Appellant] was under the influence of alcohol to a degree that rendered him incapable of safe driving at the time of the traffic accident had not been proven beyond a reasonable doubt as the timing of the accident could not be established.

Following the denial of the Motion for Judgment of Acquittal, [Appellant] elected to testify at trial. [Appellant] testified that on the date of the incident, he went to Jaffre's restaurant in Greensburg at 4:17 p.m. to purchase gift cards. He then indicated

that at 4:22 p.m., he ordered a pizza from Sunset Café in Greensburg, which was to be ready for pickup at 5:02 p.m., and while he waited to leave to pick up his pizza, he ordered a drink and some food at Jaffree's. After leaving Jaffree's, and in route to Sunset Café, [Appellant] testified that he encountered Middleton and was involved in a traffic accident between 5:12 p.m. and 5:14 p.m. [Appellant] indicated that he was not hesitant to provide Middleton with his information; however, he was running late and had a friend coming over, and he just wanted to get out of there. [Appellant] testified that Sunset Café is located approximately one mile from the scene of the accident, and he arrived at 5:32 p.m. [Appellant] then indicated that he left the restaurant and arrived at his residence at 5:36 p.m. where he made a "tall Jack and water," ate a couple pieces of pizza, and then made another "strong[,] tall Jack and water" before Greensburg Police arrived at 6:08 p.m.

On cross-examination, [Appellant] testified that while at Jaffre's, he consumed two Captain and Cokes and then admitted to striking Middleton's car leaving Jaffre's.

Trial Court Opinion (T.C.O.), 6/18/20, at 1-5 (citations and footnotes omitted).

In connection with his arrest, Appellant was charged with DUI (General Impairment – Incapable of Safe Driving) and DUI (Refusal to Submit to Chemical Testing). After a bench trial, the trial court convicted Appellant of DUI (General Impairment – Incapable of Safe Driving). On November 27, 2019, the trial court sentenced Appellant to forty-eight (48) hours to six (6) months' incarceration, suspended his driver's license for one year, and ordered him to submit to a CRN evaluation and pay costs and fines.

On November 27, 2019, Appellant filed a timely post-sentence motion, which the trial court deemed to be denied by operation of law on April 23, 2020. On May 12, 2020, Appellant filed a timely appeal and subsequently

complied with the trial court's direction to file a Concise Statement of Errors on Appeal pursuant to Pa.R.A.P. 1925(b).

Before we reach the merits of this case, we must determine whether the appeal is properly before us. Pennsylvania Rule of Criminal Procedure 720 provides, in pertinent part, that after filing a timely post-sentence motion, the defendant shall file a notice of appeal "within 30 days of the entry of the order denying the motion [or] within 30 days of the entry of the order denying the motion by operation of law in cases in which the judge fails to decide the motion." Pa.R.Crim.P. 720(A)(2)(a)-(b). The trial court is required to decide the post-sentence motion within 120 days of its filing. Pa.R.Crim.P. 720(B)(3)(a). If the trial court fails to decide the motion within the 120-day time period, the motion will be deemed denied by operation of law. Id. Rule 720 requires the clerk of courts to enter an order denying the motion by operation of law on behalf of the court. Pa.R.Crim.P. 720(B)(3)(c).

In this case, the trial court indicated that it had inadvertently failed to rule on Appellant's post-sentence motion within the 120 day time limit set forth in Rule 720. The docket shows that the clerk of courts also failed to enter an order deeming the motion denied by operation of law at the expiration of the applicable 120 day time period. Under such circumstances, the failure of the clerk of courts to enter the requisite order notifying the appellant that the post-sentence motion had been denied by operation of law constitutes an administrative breakdown of court processes and the appeal is

considered timely filed. Commonwealth v. Perry, 820 A.2d 734, 735 (Pa.Super. 2003).

Appellant raises the following issues on appeal:

I.      Did the Trial Court in denying [Appellant's] Motion for Judgment of Acquittal following the close of the Commonwealth's case?

II.     Did the Trial Court err in determining that sufficient evidence was presented by the Commonwealth to find [Appellant] guilty of Driving Under the Influence of Alcohol: General Impairment – Incapable of Safe Driving?

III.    Did the Trial Court err in finding that the verdict of guilty at Count One was supported by the Weight of the Evidence?

Appellant's Brief, at 4 (reordered for ease of review).

In the first two claims, Appellant argues the trial court erred in denying his motion for judgment of acquittal and challenges the sufficiency of the evidence. In reviewing Appellant's claims, we are guided by the following principles:

"A motion for judgment of acquittal challenges the sufficiency of the evidence to sustain a conviction on a particular charge, and is granted only in cases in which the Commonwealth has failed to carry its burden regarding that charge." Commonwealth v. Emanuel, 86 A.3d 892, 894 (Pa.Super. 2014). Therefore, in usual circumstances, we apply the following standard of review to sufficiency claims which arise in the context of a motion for judgment of acquittal:

A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as

- 6 -

> a matter of law. When reviewing a sufficiency claim[,] the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

Commonwealth v. Widmer, 560 Pa. 308, 744 A.2d 745, 751 (2000) (internal citations omitted) (emphasis added).

Commonwealth v. Stahl, 175 A.3d 301, 303–304 (Pa.Super. 2017).

> In applying this standard, Pennsylvania courts acknowledge that "the Commonwealth may sustain its burden by means of wholly circumstantial evidence." [Commonwealth v.] Montalvo, [598 Pa. 263, 274,] 956 A.2d [926, 932 (2008)] (citing Commonwealth v. Diggs, 597 Pa. 28, 949 A.2d 873, 877 (2008)). The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence, as any doubts regarding a defendant's guilt may be resolved by the fact finder unless the evidence is so inconclusive that, as a matter of law, no probability of guilt may be drawn. Commonwealth v. Devine, 26 A.3d 1139, 1145 (Pa.Super. 2011) (quoting Commonwealth v. Jones, 874 A.2d 108, 120–121 (Pa.Super. 2005)). The fact finder is free to believe all, part, or none of the evidence. Id.

Commonwealth v. Sexton, 222 A.3d 405, 416 (Pa.Super. 2019).

As noted above, Appellant was convicted of DUI (General Impairment – Incapable of Safe Driving) under Section 3802(a)(1) of the Vehicle Code, which provides that "[a]n individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle." 75 Pa.C.S.A. § 3802(a)(1). This Court has further provided that:

> The Commonwealth must establish that the defendant (1) was operating a motor vehicle (2) after imbibing a sufficient amount of alcohol such that he was rendered incapable of safely operating

the motor vehicle. Commonwealth v. Segida, 985 A.2d 871, 876 (Pa. 2009) (citing Commonwealth v. Kerry, 906 A.2d 1237, 1241 (Pa.Super. 2006)). To prove a person is incapable of driving safely, the Commonwealth must prove

> that alcohol has substantially impaired the normal mental and physical faculties required to operate the vehicle safely; substantial impairment means a diminution or enfeeblement in the ability to exercise judgment, to deliberate or to react prudently to changing circumstances and conditions. The meaning of substantial impairment is not limited to some extreme condition of disability. Section 3802(a)(1), like its predecessor, is a general provision and provides no specific restraint upon the Commonwealth in the manner in which it may prove that an accused operated a vehicle under the influence of alcohol to a degree which rendered him incapable of safe driving.

Kerry, 906 A.2d at 1241 (citations, quotation marks, and brackets omitted).

Commonwealth v. Clemons, ---A.3d---, 2020 PA Super 261 (Pa.Super. Oct. 28, 2020).

Our courts have also emphasized that "[e]xpert testimony is not necessary in a DUI-alcohol case under 75 Pa.C.S.A. § 3801(a)(1); the Commonwealth may present any form of proof, including the defendant's behavior, the nature of the accident itself, and any other relevant evidence (which may or may not include blood alcohol tests)." Commonwealth. v. DiPanfilo, 993 A.2d 1262, 1267 (Pa.Super. 2010) (citing Commonwealth v. Segida, 604 Pa. 103, 985 A.2d 871, 879 (2009)).

Moreover, the charge under Section 3801(a)(1) is an "at the time of driving" offense, which requires the prosecution to prove the accused was "driving, operating, or in actual physical control of the movement of a vehicle during the time when he or she was rendered incapable of safely driving doing

so due to the consumption of alcohol." Segida, 604 Pa. at 116, 985 A.2d at 879. The Supreme Court explained further:

> By the plain language of subsection 3802(a)(1), driving is proscribed after the imbibing of sufficient alcohol such that the individual is rendered incapable of safely driving. In contrast to subsections 3802(a)(2), (b), and (c), all of which require that the offender's blood alcohol level reach a certain specified elevation within two hours of driving, there is no time element explicitly delineated in subsection 3802(a)(1). However, to avoid absurd applications of subsection 3802(a)(1), a time element obviously must be inferred. Without the inference of some rational and reasonable temporal link between drinking and driving, then a motorist would violate the statute by driving at any time—even days or weeks—after having imbibed sufficient alcohol to be rendered incapable of safely driving.

Id. at 114, 985 A.2d at 878. However, the Commonwealth is not required to prove that the defendant did not drink any alcohol after he stopped driving. Id.

Specifically, Appellant claims the Commonwealth failed to present sufficient evidence to show that he was operating a vehicle while under the influence of alcohol such to the extent that he could not operate the vehicle safely. Appellant emphasizes that Middleton, the only witness that observed Appellant at the scene of the accident, did not observe any signs that Appellant was impaired from intoxication, such as smelling of the odor of alcohol, slurring his speech, or erratic driving.

As the arresting officers were not present at the scene, Appellant argues that their observations did not support the trial court's finding that Appellant was impaired while operating his motor vehicle. While the officers did observe

Appellant exhibited signs of intoxication, Appellant points out that he drank two alcoholic beverages after returning home from the accident scene. As such, Appellant argues that the Commonwealth failed to prove he was intoxicated while operating his vehicle.

However, after viewing the evidence in the light most favorable to the Commonwealth as verdict winner, we find that the Commonwealth satisfied its burden to prove that Appellant was incapable of safely driving due to the influence of alcohol when he crashed into Middleton's car. Appellant admitted that he had been drinking before he lost control of his vehicle and rear-ended Middleton's car, which was already stopped motionless at a red light. Middleton testified that the accident occurred in the early evening when there were no adverse weather conditions and it was just starting to get dark. See Segida, 604 Pa. at 118, 985 A.2d at 880 (finding the appellee's one-vehicle accident itself constituted evidence that the appellee drove when he was incapable of doing so safely).

Middleton testified that he observed that Appellant was evasive and indicated that he wanted to leave the accident scene quickly without exchanging insurance information with Middleton due to the "state police presence," which points to Appellant's consciousness of guilt. Notes of Testimony (N.T.), 10/31/18, at 7. Middleton described Appellant "to be sort of not with it, kind of maybe under the influence maybe." Id. While Middleton could not indicate whether Appellant was intoxicated, Middleton did notice Appellant's behavior was peculiar.

When officers arrived at Appellant's home within an hour of the accident, the officers noticed that Appellant had a strong smell of alcohol, slurred speech, glassy eyes, and an unsteady gait. Appellant admitted that he had hit Middleton's vehicle but refused to perform any Standardized Field Sobriety testing or a breath test, further suggesting Appellant's consciousness of guilt.[2]

Despite Appellant's claim to the contrary, the Commonwealth did not have the burden of proving that Appellant did not drink after he stopped driving. Instead, we agree with the trial court's conclusion that the Commonwealth presented sufficient evidence to show that at the time of the accident, Appellant was incapable of driving safely due to the influence of alcohol.

Appellant also claims that his conviction was not supported by the weight of the evidence. When considering this challenge, we apply the following standard of review:

> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:
>
>> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the

---

[2] Our Supreme Court upheld the constitutionality of 75 Pa.C.S.A § 1547(e) which allows the prosecution to admit evidence of an arrestee's refusal to submit to chemical testing without a search warrant as proof of consciousness of guilt at the arrestee's trial on a DUI charge. Commonwealth v. Bell, 211 A.3d 761, 776 (Pa. 2019).

evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

[Commonwealth v. Widmer],560 Pa. [308,] 321–22, 744 A.2d [745,] 753 [(2000)] (emphasis added).

This does not mean that the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is unfettered. In describing the limits of a trial court's discretion, we have explained:

The term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will.

Widmer,560 Pa. at 322, 744 A.2d at 753 (quoting Coker v. S.M. Flickinger Co., 533 Pa. 441, 447, 625 A.2d 1181, 1184–85 (1993)).

Commonwealth v. Clay, 619 Pa. 423, 64 A.3d 1049, 1055 (2013) (some internal citations omitted). In order to grant a new trial on the grounds that the verdict is against the weight of the evidence, "the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court." Commonwealth v. Akhmedov, 216 A.3d 307, 326 (Pa.Super. 2019) (en banc).

Appellant simply reiterates the aforementioned claims and argues that his version of the events in question is more credible. While Appellant essentially asks this Court to reweigh the evidence and overturn the trial court's credibility determinations, we will not substitute our judgment for that of the factfinder, whose findings are supported by the record. Commonwealth v. Hughes, 908 A.2d 924, 928 (Pa.Super. 2006) (emphasizing that the trial court, acting as factfinder and "passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence"). Accordingly, we conclude that the trial court did not abuse its discretion in denying Appellant's challenge to the weight of the evidence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/7/2020